19 5252

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
LLOYD WILLIAMS, on behalf of himself and all others similarly situated

**DEFENDANTS**
ENCORE CAPITAL GROUP, INC., MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   San Diego County, CA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ira Neil Richards & Stephen Fogdall, Schnader Harrison Segal & Lewis LLP, 1600 Market St., Suite 3600, Philadelphia, PA 19103, (215)-751-2581

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & / ☐ 367 Health Care/ |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Product Liability |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / ☐ 368 Asbestos Personal ☐ 340 Marine / Injury Product |  | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product / Liability Liability / **PERSONAL PROPERTY** |  | ☐ 840 Trademark **SOCIAL SECURITY** | ☒ 480 Consumer Credit ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | ☐ 861 HIA (1395ff) | Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Product Liability / ☐ 380 Other Personal | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | ☐ 360 Other Personal / Property Damage | ☐ 720 Labor/Management | ☐ 864 SSID Title XVI | Exchange |
|  | Injury / ☐ 385 Property Damage | Relations | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
|  | ☐ 362 Personal Injury - / Product Liability | ☐ 740 Railway Labor Act |  | ☐ 891 Agricultural Acts |
|  | Medical Malpractice | ☐ 751 Family and Medical Leave Act |  | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate |  | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ / Sentence |  | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General |  |  | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | **IMMIGRATION** |  | State Statutes |
|  | Employment / **Other:** | ☐ 462 Naturalization Application |  |  |
|  | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration |  |  |
|  | Other / ☐ 550 Civil Rights | Actions |  |  |
|  | ☐ 448 Education / ☐ 555 Prison Condition |  |  |  |
|  | ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fair Debt Collection Practices Act, 15 U.S.C. s. 1692 et seq.
Brief description of cause:
Class action for violations of the FDCPA and PA consumer protection statutes.

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ to be determined at trial
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

NOV - 7 2019

DATE
11/7/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

19-CV-5252

19 5252

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: **1049 E. Price Street, Philadelphia, PA 19138**

Address of Defendant: 350 Camino De La Reina, Suite 100, San Diego, CA 92108, 2365 Northside Drive, Suite 300, San Diego, CA 92108

Place of Accident, Incident or Transaction: **Pennsylvania**

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/7/19   Must sign here   **PA I.D. No. 87444**
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
   *(Please specify):* Consumer Credit

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, **Stephen A. Fogdall**, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

NOV - 7 2019

DATE: 11/07/2019   Sign here if applicable   **PA I.D. No. 87444**
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Lloyd Williams, on behalf of himself and all others similarly situated, | : | CIVIL ACTION |
| v. | : | 19   5252 |
| Encore Capital Group, Inc., Midland Credit Management, Inc., Midland Funding, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.               ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                    ( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.       ( )

| | | |
|---|---|---|
| 11/7/2019 | Stephen A. Fogdall | Plaintiff Lloyd Williams |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-751-2581 | 215-751-2205 | sfogdall@schnader.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

NOV – 7 2019

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LLOYD WILLIAMS, *on behalf of himself and all others similarly situated,* | : | **COMPLAINT – CLASS ACTION** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.:  19     5252 |
| | : | |
| ENCORE CAPITAL GROUP, INC., | : | |
| MIDLAND CREDIT MANAGEMENT, | : | |
| INC., MIDLAND FUNDING, LLC, | : | |
| | : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |

## CLASS ACTION COMPLAINT

Plaintiff Lloyd Williams brings this action for damages, declaratory and injunctive relief under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1 *et seq.*, Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.*, and Pennsylvania's Loan Interest and Protection Law ("LIPL"), 41 P.S. § 101 *et seq.* against Encore Capital Group, Inc. ("Encore Capital"), Midland Credit Management, Inc. ("MCM"), and Midland Funding, LLC ("Midland," and collectively with Encore Capital and MCM, "Encore") on his own behalf and on behalf of all others similarly situated. For his class action complaint, Mr. Williams makes the following allegations, which are based on his personal knowledge as to his own acts, and on information and belief after investigation of publicly available information as to the actions of others, and are likely to have further evidentiary support following a reasonable opportunity to take discovery:

## NATURE OF THE CASE

1.     Encore is a vulture buyer of defaulted credit card debt issued by national banks and state-chartered, federally-insured banks.  It operates under a parasitic business model in which it seeks to free-ride on these banks' ability under federal law to charge consumers essentially unlimited interest rates on credit card debt while escaping the burdens of the extensive regulatory scheme to which they are subject.

2.     Encore buys "charged off" credit card debt — debt the issuing bank has concluded is uncollectible — for a tiny fraction of the face amount of the debt (typically between 3 to 15 cents on the dollar, depending on the age of the debt), and then purports to be entitled to collect the entire amount of the debt, including all of the double-digit interest the bank charged, just as if it were itself a national bank or state-chartered, federally-insured bank, which it is not.

3.     Plaintiff Mr. Williams, a resident of Philadelphia, Pennsylvania, applied for and received a My BJs Perks Mastercard issued by Comenity Capital Bank ("Comenity").  Comenity is a bank chartered under Utah law and insured by the Federal Deposit Insurance Company ("FDIC"), which is its primary federal regulator.

4.     As a state-chartered, federally-insured bank, Comenity is not subject to Pennsylvania's interest-rate limits for consumer credit.  The legal rate of interest on a loan of less than $35,000 to a consumer in Pennsylvania is 6% per year, without compounding, unless the lender is licensed as a "consumer discount company" by the Pennsylvania Department of Banking and Securities (the "Department").  *See* LIPL, 41 P.S. § 201; *see also* Consumer Discount Company Act ("CDCA"), 7 P.S. §§ 6203, 6213, 6217.1.  A lender with a consumer discount company license can charge a consumer interest at a rate of up to approximately 24% per year, but cannot charge compound interest. 7 P.S. § 6217.1.  Comenity, by contrast, charged

Mr. Williams interest at an annual rate of more than 27%, which it calculated using a "daily balance" method that allowed it to compound interest on a daily basis.

5.      Comenity can charge a Pennsylvania resident interest at an annual rate of 27% or more, and compound the interest on a daily basis, because federal law allows national banks and state-chartered, federally-insured banks to do this, and federal law preempts Pennsylvania's interest rate limits as applied to such banks.  On the other hand, Comenity and other national banks and state-chartered banks are subject to extensive regulatory oversight and regular examinations by federal regulators such as the FDIC or, in the case of national banks, the Office of the Comptroller of the Currency ("OCC"), as well as state agencies.

6.      Encore, however, is not a national bank or state-chartered bank and cannot legally charge double-digit interest, or compound interest, on loans to Pennsylvania consumers. Pennsylvania law likewise prohibits Encore from making an end run around these limits by purchasing credit card debt from national banks and state-chartered banks and then attempting to collect interest that it cannot legally charge.

7.      Moreover, Encore is not subject to the same oversight as national banks and state-chartered, federally-insured banks, so there is much less regulatory control of its behavior. Encore Capital is not licensed by the Department to conduct any business in Pennsylvania, and in particular has no authority to purchase and collect consumer debts from Pennsylvania residents. Midland and MCM do hold sales finance company licenses issued by the Department under the Motor Vehicle Sales Finance Act ("MVSFA"), but these licenses do not permit the holder to purchase and collect charged-off credit card accounts issued by national banks and state-charted, federally-insured banks.  MCM also has a collector-repossessor license issued by the Department, but this license only allows it to repossess motor vehicles.

3

8.      In short, despite the fact that Encore is neither a national bank nor a state-chartered, federally-insured bank, it attempts to skirt Pennsylvania law by purchasing credit card loans made by such banks and then attempting to collect these debts as if it had the same authority as such banks, all the while ignoring the restrictions that apply to it and operating without the regulatory scrutiny to which these banks are subject.

9.      After Mr. Williams received his credit card from Comenity, his employer reduced him to part time status and he could not afford to make the minimum payments on his credit card balance. Comenity purportedly charged off Mr. Williams' account on March 18, 2018. On March 30, 2018, Comenity purportedly sold Mr. Williams' account to Midland.

10.     Mr. Williams was not aware that Midland purportedly had purchased his credit card account until MCM filed a lawsuit against him on Midland's behalf in Philadelphia Municipal Court on April 15, 2019.

11.     The complaint, attached as Exhibit A, demands payment from Mr. Williams of $2,189.51 in "Principal." The complaint does not include any putative account statements or any other information explaining how the purported "Principal" was calculated or establishing that Mr. Williams in fact ever owed that amount of money to Comenity.

12.     The credit card debt that Mr. Williams allegedly owed Comenity, and which Encore seeks to collect from Mr. Williams in its lawsuit, includes interest in excess of the 6% annual simple interest rate allowed by the LIPL.

13.     Although Midland purports to be the holder of debt that Mr. Williams allegedly owed to Comenity, Midland is in reality a debt collection conduit for Encore Capital and holds the debt as the nominal owner for Encore Capital's benefit.

4

14.     Encore Capital is actively engaged in directing the debt collection activity of MCM and Midland.  All of these entities function in closely coordinated fashion for the economic benefit of Encore Capital.

15.     By purchasing, at steep discounts, credit card debts allegedly owed to national banks and state-chartered federally insured banks by Pennsylvania residents such as Mr. Williams, and then suing the alleged debtors or making other attempts to collect the entire face amount of the putative debts, including double-digit interest that Encore is not authorized by Pennsylvania law to collect, Encore is falsely representing to these Pennsylvania residents that it has the legal authority to collect these putative debts in violation of the FDCPA, FCEUA and UTPCPL.  Encore induces many of these individuals to pay it for these debts, and to settle the lawsuits it is not legally entitled to bring, further violating the FDCPA, FCEUA, UTPCPL and the LIPL.

**THE PARTIES**

16.     Plaintiff Lloyd Williams is a citizen of the Commonwealth of Pennsylvania.

17.     Defendant Encore Capital is a Delaware Corporation with its principal executive offices located at 350 Camino De La Reina, Suite 100, San Diego, California 92108.

18.     Defendant MCM is a Kansas corporation with its principal place of business located at 350 Camino De La Reina, Suite 300, San Diego, California 92108.  MCM functions as an in-house debt collection agency for Encore Capital, filing lawsuits and making other efforts to collect, for Encore Capital's benefit, credit card debts allegedly owed by Pennsylvania residents.

19.     Defendant Midland is a limited liability company with its principal place of business located at 2365 Northside Drive, Suite 300, San Diego, California 92108-2709.  On information and belief, Midland is the nominal holder of thousands, if not tens of thousands, of

credit card accounts acquired by Encore at deep discounts, which Pennsylvania residents allegedly owed to national banks and state-chartered federally insured banks.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because this suit arises under the federal FDCPA, and the state-law claims under Pennsylvania's FCEUA, UTPCPL and LIPL are so related to the FDCPA claims that they form part of the same case and controversy.  In the alternative, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the suit is between citizens of different states.  Alternatively, this Court has jurisdiction under the Class Action Fairness Act because, on information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and because this is a class action in which a member of the class is a citizen of a state different from the defendants. *See* 28 U.S.C. § 1332(d)(2)(A).

21.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c)(2) because Defendants do business in this District and are subject to personal jurisdiction in this District, and because a substantial part if the events or omissions giving rise to the claims occurred in this District.

## THE FACTS

### *The Defendants*

22.     Defendants Encore Capital, Midland, and MCM are engaged in the business of acquiring and collecting unpaid consumer debt, including charged-off credit card accounts purchased from national banks and state-chartered, federally-insured banks.

23.     Encore Capital is a publicly-traded debt collection company.  According to its 2018 Form 10-K, Encore Capital "purchase[s] portfolios of defaulted consumer receivables at deep discounts to face value and manage[s] them by working with individuals as they repay their

6

obligations and work toward financial recovery." Encore Capital Group, Form 10-Q Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, 9 (2019), https://encorecapital.gcs-web.com/static-files/91a47316-a473-4c9b-a1c6-4be381cb6803.

24.     Midland and MCM are subsidiaries of Encore Capital. "Through [MCM] and its domestic affiliates . . . , [Encore Capital claims to be] a market leader in portfolio purchasing and recovery in the United States." Encore Capital 10-K, *supra* ¶ 23, at 1.

25.     None of the defendants are national banks or state-chartered, federally-insured banks, nor are they agents or subsidiaries of such a bank.

### *Mr. Williams' Credit Card*

26.     The My BJ's Perks Mastercard that Comenity issued to Mr. Williams is known as an "affinity credit card": a retail store, or other organization, allows its name to be put on a credit card issued by a bank. The bank benefits by gaining new cardholders who do business with or otherwise have an "affinity" for the organization lending its name, and the organization benefits typically by receiving a percentage of the purchases made using the card or a portion of the interchange fees charged when transactions are processed.

27.     While BJ's offers benefits to holders of My BJ's Perks Mastercard credit cards in the form of cash back offers on purchases at BJ's stores, cardholders are not limited to using the cards at BJ's stores and may use the cards to buy goods and services anywhere Mastercard credit cards are accepted.

28.     In the language of the Uniform Consumer Credit Code, a My BJ's Perks Mastercard such as was issued to Mr. Williams is a "lender credit card" not a "seller credit card." The card was issued to Mr. Williams by Comenity. To the extent Mr. Williams entered into any agreement to borrow money at 27% or more annual interest to fund purchases made using the

card, he did so solely with Comenity.  At no time did Mr. Williams enter into an agreement with BJ's pursuant to which he agreed to borrow money from BJ's at any rate of interest, let alone 27% or more.

29.     When a holder of a My BJ's Perks Mastercard — or, for that matter, any other credit card issued by a national bank — uses the card to make a purchase of goods or services at BJ's or any other merchant, the cardholder is not borrowing money from the merchant to make the purchase.  The cardholder is *not* purchasing the goods or services on credit *extended by the merchant*, as the cardholder would be if, for example, the purchase were made in the form of an installment sales contract under which the merchant agreed to accept partial payments from the borrower over a specified period time.

30.     To the contrary, when a cardholder presents a My BJ's Perks Mastercard or other bank-issued credit card to a merchant to make a purchase, the purchase is completed when the merchant receives authorization from the issuing bank confirming that the card is valid and that the purchase is within the cardholder's available credit limit.  The authorization from the issuing bank effectively constitutes a promise to pay made by the issuing bank, which the merchant accepts in exchange for the goods or services acquired by the cardholder.

31.     When bank-issued credit cards began to be widely used in the 1960s and 1970s, the process by which a merchant received payment from the cardholder's bank was paper-based and time-consuming.  At the time a card was presented for a purchase, the merchant prepared a paper sales slip describing the transaction, imprinted the sales slip with the purchaser's credit card account number, and then physically deposited it with the issuing bank to be processed for payment.

32.     Today this paper-based process is, of course, obsolete and virtually nonexistent. Credit card transactions are now processed automatically and electronically. According to Mastercard, its network handles more than 160 million transactions per hour, with an average response time of 130 milliseconds. *See* Clearing and Settlement of Interbank Card Transactions: A Mastercard Tutorial for Federal Reserve Payments Analysts, available on the Federal Reserve Bank of Philadelphia's website at https://www.philadelphiafed.org/-/media/consumer-finance-institute/payment-cards-center/publications/discussion-papers/2013/D-2013-October-Clearing-Settlement.pdf. Credit card purchases are authorized by the issuing bank through Mastercard's network virtually instantaneously. Purchases are settled (the merchant receives payment from the cardholder's bank) within two days. *Id.*

33.     Mastercard emphasizes that its network is restricted to "banks and other federal- or state-chartered financial institutions," and thus "operate[s] on the underpinnings of a highly regulated set of companies that are subject to routine supervision and examination for safety, soundness, and compliance with all other regulations, including those related to fairness and privacy. Therefore, every dollar exchanged between U.S. cardholders and merchants participating in [Mastercard's network] is settled among banks and financial institutions operating under the oversight of a state or federal government body." *Id.*

34.     Encore is not such a financial institution and is not "highly regulated" or "subject to routine supervision and examination for safety, soundness, and compliance with all other regulations, including those related to fairness and privacy."

### *Federal Law Governing Interest on Loans by National Banks and State-Chartered Banks*

35.     Section 85 of the National Bank Act ("NBA") allows a national bank to charge interest on any loan at the rate allowed by the state where the bank is located. 12 U.S.C. § 85.

By locating in a state that does not impose a maximum interest rate, a national bank is permitted

to charge any interest rate whatsoever. The bank may do so even in states that impose a

maximum interest rate because state interest-rate limits are preempted by the NBA as applied to

national banks. *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S.

299, 308 (1978).

36.     In 1980, Congress gave state-chartered, federally-insured banks, such as

Comenity, the same authority to charge interest without regard to state limits, in order to ensure

that such banks would not be competitively disadvantaged in relation to national banks. 12

U.S.C. § 1831d. A state-charted, federally-insured bank located in a state that does not impose

any maximum interest rate may therefore charge any interest rate whatsoever on a loan. State

interest-rate limits imposed in other jurisdictions where the bank does business are preempted,

just as they are for national banks.

### *Pennsylvania Law Governing the Sale and Collection of Consumer Credit*

37.     Although Pennsylvania's interest-rate limits may be preempted in application to

national banks and state-chartered, federally-insured banks, they are *not* preempted as applied to

a non-bank purchaser of debts originated by such banks, such as Encore. And there is good

reason for this. Debt collectors such as Encore largely operate outside of the extensive

regulatory controls applicable to national banks and state-chartered, federally-insured banks. All

the more reason why state consumer protection laws and interest rate limits should, and do, apply

to them.

38.     Pennsylvania's LIPL prohibits interest in excess of 6% per year, without

compounding, on loans to consumers of less than $35,000. 41 P.S. § 201.

39.     Pennsylvania's CDCA permits an entity to which the Department has issued a consumer discount company license to collect, at a maximum, either (i) $9.50 in simple annual interest per $100 of principal for the first forty-eight (48) months of the term of the contract and $6 in simple annual interest per $100 of principal for the remainder of the contract term, plus specified fees, 7 P.S. §§ 6213(E); or (ii) 2% per month simple interest, 7 P.S. § 6217.1.A.

40.     However, under Pennsylvania law, a purchaser of debts governed by the CDCA may not collect these debts unless it "obtain[s] its own statutorily conferred right to charge and collect interest, fees and other charges in excess of the general usury rate of 6% per annum simple interest." Interpretive Letter issued by the Department on November 19, 2001 ("Interpretive Letter"), 2001 WL 35766128, at *9.

41.     Similarly, a purchaser of consumer credit card debt issued by national banks or state-chartered, federally-insured banks to Pennsylvania residents may not collect such debts unless it "find[s] some way to gain the lawful authority to stand in the shoes of the originating lender and comply with the [originating lender's] governing statute." Interpretive Letter, 2001 WL 35766128, at *15.

42.     Encore has not "f[ou]nd some way to gain the lawful authority" of a national bank or a state-chartered, federally-insured bank in order to lawfully collect credit debts allegedly owed by Pennsylvania residents to such banks. In particular, it does not have the lawful authority to collect interest charged by such banks in excess of Pennsylvania's limits.

43.     Neither Encore Capital, nor Midland, nor MCM is a national bank or a state-chartered, federally-insured bank.

11

44.     According to the Department's online financial institution search tool (http://www.instsearch.pa.gov/), neither Encore Capital, nor Midland, not MCM has a consumer discount company license under the CDCA.

45.     Rather, Midland has a sales finance company license, and MCM has a sales finance company license and collector-repossessor license, all issued by the Department under the MVSFA, which is inapplicable here.  Encore Capital has no license issued by the Department whatsoever.

46.     A sales finance company license only permits Midland and MCM to collect 18% to 21% simple interest on installment sale contracts covering the retail sale of motor vehicles. *See* 12 Pa. C.S. § 6243.  A collector-repossessor license only permits a licensee to repossess a motor vehicle without legal process.  *See* 12 Pa. C.S. § 6252(b).

47.     Neither a sales finance company license nor a collector-repossessor license authorizes a company to acquire and collect charged-off, consumer credit card debt issued by a national bank or state-chartered, federally-insured bank.

48.     Despite lacking any legal authority under Pennsylvania law, Encore has not only acquired credit card debts purportedly issued by national banks and state-chartered, federally-insured banks to Pennsylvania residents, but has filed lawsuits against Pennsylvania residents and made other efforts to coerce these putative debtors into making payments Encore has no authorization to collect.

### *Encore's Lawsuit Against Mr. Williams*

49.     On April 15, 2019, Encore filed a lawsuit, in Midland's name, against Mr. Williams in Philadelphia Municipal Court in an attempt to collect a putative debt.  *See* Exhibit A.

50.     The attorney who filed the lawsuit is employed by MCM and, upon information and belief, filed the lawsuit on behalf of and at the direction of Encore Capital in an attempt to collect the charged-off credit card debt from Mr. Williams for Encore Capital's benefit.

51.     According to Encore's suit, on March 22, 2016, Plaintiff "entered into a revolving credit card agreement with COMENITY CAPITAL BANK/ MY BJS PERKS MASTERCARD, received a credit card . . . and used or authorized the use of said card to [sic] for the purpose of obtaining goods and/or services and/or cash advances." Exhibit A.

52.     The annual interest rate on Mr. Williams' Comenity Capital Bank/My BJs Perks Mastercard exceeded 27%.

53.     Encore alleges that "the last payment posted to the account January 18, 2018," that according to its records, Mr. Williams owed a balance of $2,189.51, and that it acquired Mr. Williams' account from Comenity on March 30, 2018. *See* Exhibit A. Encore does not disclose the price that it paid for Mr. Williams' putative debt. On information and belief, the price Encore paid was deeply discounted by an amount far greater than 6%, or even 24%.

54.     In its suit, Encore seeks to recover the entire $2,189.51 allegedly incurred by Mr. Williams on his Comenity Capital Bank/My BJs Perks Mastercard without making any adjustment so as to avoid collecting interest charged in excess of the maximum imposed by the LIPL.

## CLASS ACTION ALLEGATIONS

55.     Mr. Williams brings Counts I through VI, set forth below, on behalf of himself and similarly situated Pennsylvania residents pursuant to Federal Rules of Civil Procedure 23(b)(2) and (3).

56.     The Court should certify the following class (the "Class"):

> All persons as to whom Encore Capital, Midland and/or MCM claims to have acquired charged-off credit card debt allegedly owed by such persons to a national bank or state-chartered, federally-insured bank, and from whom Encore Capital, Midland and/or MCM, or any of their agents, has made any attempt, by any means, to collect any portion of such alleged credit card debt from such persons while they resided in Pennsylvania.

57.     As shown in Counts I through VI below, Encore is liable to the members of the Class for statutory, actual and treble damages, attorney's fees, declaratory relief and a permanent injunction barring Encore from making any attempt to collect the credit card debts Encore claims the Class members owe.

58.     The Class is so numerous that joinder of separate claims on behalf of all members is impracticable.  Encore's conduct affects thousands of Pennsylvania residents.  For example, in the past year, Midland has filed over 3,900 suits seeking to collect debts in Philadelphia Municipal Court alone.

59.     There are questions of law or fact common to the Class, including:

- whether Pennsylvania law permits a non-bank to purchase charged-off credit card debts originated by national banks and state-chartered, federally-insured banks and then collect, and attempt to collect, these debts from Class members, through lawsuits, demand letters, telephone calls and other means (it does not);

- whether Pennsylvania law permits a non-bank to purchase charged-off credit card debts originated by national banks and state-chartered, federally-insured banks, including interest charged by these banks that exceeds the LIPL's 6% limit, and then collect, and attempt to collect, from

Class members any portion of these debts that exceeds 6% simple interest (it does not);

- whether by purchasing credit card debts putatively owed by Class members to national banks and state-chartered, federally-insured banks, and then attempting to collect these debts without legal authority, Encore has misrepresented to Class members the character, amount or legal status of such debts in violation of the FDCPA and the FCEUA (it has);

- whether by purchasing credit card debts putatively owed by Class members to national banks and state-chartered, federally-insured banks, and then attempting to collect from Class members amounts allegedly owed in excess of the 6% simple interest, Encore has collected, and attempted to collect, amounts not permitted by law in violation of the FDCPA and the FCEUA (it has);

- whether by purchasing credit card debts putatively owed by Class members to national banks and state-chartered, federally-insured banks, and then attempting to collect from Class members amounts allegedly owed in excess of the 6% simple interest, Encore has violated the UTPCPL (it has);

- whether by purchasing credit card debts putatively owed by Class members to national banks and state-chartered, federally-insured banks, and then attempting to collect from Class members amounts allegedly owed in excess of the 6% simple interest, Encore has violated the LIPL (it has).

60.    With respect to all Counts, common questions predominate over any individual issues because any such individual issues do not and cannot negate the fact that Encore does not have any legal authority to purchase and attempt to collect credit cards debts allegedly owed by Class members to national banks and state-chartered, federally-insured banks, let alone amounts that Class members allegedly owe in excess of 6% simple interest.  Encore is liable to Class members for this very reason, notwithstanding any individual issues that might arise.

61.    Mr. Williams is a member of the Class and his claims are typical of the claims of the Class.  Mr. Williams is not subject to any unique defenses that would render his claims atypical of those of the other Class members.

62.    Mr. Williams will adequately protect the interests of the Class.

63.    Mr. Williams' counsel has significant class action experience and will fairly and adequately protect the interests of the Class.

64.    Mr. Williams anticipates that there will be no difficulties in managing this case as a class action.  Class members are ascertainable from Encore's or public records and damages can be calculated based on those records.

## COUNT I
### Acquisition and Collection of Debts Without Any Statutory Authority in Violation of the Section 1692e of the FDCPA

65.    The preceding paragraphs 1 through 64 are incorporated by reference as if set forth in full herein.

66.    In order to acquire and collect interest, fees, and other charges on credit card debt from a national bank or state-chartered, federally-insured bank, an entity must "gain the lawful authority to stand in the shoes of the originating lender and comply with the [lender's] governing statute."  Interpretive Letter, 2001 WL 35766128, at *15.

67.     Comenity, a state-chartered, federally-insured bank, issued Mr. Williams' credit card account and charged interest and fees under the authority granted to it under 12 U.S.C. § 1831d.

68.     Section 1831d does not extend to non-bank debt collectors such as Encore, and therefore does not give Encore the authority to acquire and collect interest, fees, or other charges on credit card debt, let alone amounts that exceed 6% simple interest.

69.     Encore does not have authority under Pennsylvania or federal law to acquire the credit card debt of Pennsylvania consumers, nor does Encore have authority under Pennsylvania or federal law to collect from Pennsylvania consumers interest, fees, or other charges on credit card debt.

70.     Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors," and "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

71.     Section 1692e of the FDCPA prohibits a "debt collector" from using any "false, deceptive, or misleading representation or means in connection with the collection of a debt," including a false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

72.     All of the defendants — Encore Capital, Midland and MCM — are "debt collectors" under the FDCPA.

73.     Section 1692a(6) defines a "debt collector" as, *inter alia*, "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be due another."

74.     In its August 2019 Quarterly Financial Statement, Encore Capital described its

business as follows:

> Encore Capital Group, Inc. ("Encore" [which, in this Complaint is
> Encore Capital]), through its subsidiaries (collectively with
> Encore, the "Company"), is an international specialty finance
> company providing debt recovery solutions and other related
> services for consumers across a broad range of financial assets.
> The Company purchases portfolios of defaulted consumer
> receivables at deep discounts to face value and manages them by
> working with individuals as they repay their obligations and work
> towards financial recovery.

Encore Capital Group, Inc. *supra* ¶ 23, at 9.

75.     In other words, the principal — indeed, the sole — purpose of Encore Capital's

business is "the collection of debts."  Moreover, Encore Capital regularly uses the

instrumentalities of interstate commerce, through letters, telephone calls, emails and lawsuits, in

the course of its debt collection business.  It is therefore a "debt collector" under the FDCPA.

76.     Encore's Quarterly Report goes on to explain that:

> Through Midland Credit Management, Inc., and its domestic
> affiliates [which, upon information and belief encompasses
> Midland] . . . , the Company is a market leader in portfolio
> purchasing and recovery in the United States.

Encore Capital Group, Inc. *supra* ¶ 23, at 9.

77.     In other words, Midland and MCM are in the business of "the collection of any

debts" and "regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or

asserted to be due another," namely Encore Capital, and they are, therefore, "debt collectors"

under the meaning ascribed to that term by the FDCPA.  *See* 15 U.S.C. § 1692a(6).

78.     In addition, Midland and MCM are each in their own right engaged in "the

collection of debts" as their "principal business," and therefore are debt collectors

notwithstanding that they are affiliates of Encore Capital.  15 U.S.C. § 1692a(6)(B).

79.    Additionally, MCM is a debt collector because it is in essence a captive debt collection law firm of Encore Capital. "Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the [FDCPA]." *Piper v. Portnoff Law Assoc., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005) (*citing Heintz v. Jenkins*, 514 U.S. 291 (1995)).

80.    Encore violated the FDCPA by making false representations regarding "the character, amount, or legal status of any debt" when it represented that it had authority to acquire and collect from Mr. Williams and the other members of the Class amounts that it did not in fact have authority to collect under Pennsylvania law.

81.    Mr. Williams and the other members of the Class are entitled to a judgment declaring (i) that Encore cannot legally purchase credit card debts allegedly owed by Pennsylvania residents to national banks and state-chartered, federally-insured banks and then attempt to collect such debts from these residents as if it were itself a national bank or state-chartered, federally-insured bank; and (ii) that any attempt by Encore to collect such debts violates Section 1692e(2)(A) of the FDCPA.

82.    Mr. Williams and the other members of the Class are entitled to a permanent injunction barring Encore from attempting to collect credit card debts originated by national banks and state-chartered, federally-insured banks and allegedly owed by members of the Class.

83.    Mr. Williams and the other members of the Class are further entitled to actual damages and statutory damages of up to $500,000 from Encore pursuant to 15 U.S.C. § 1692k(a)(1) & (2)(B).

84.    Such actual damages include any amounts members of the Class paid to Encore in satisfaction or partial satisfaction of credit card debts Encore claimed to be entitled to collect, as

well as compensation for the emotional distress, anxiety and frustration that members of the Class suffered as a result of Encore's unlawful collection efforts.

85.     Mr. Williams and the other members of the Class are also entitled to an award of attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).

**COUNT II**
**Unlawful Collection of Debts in Violation of Section 1692f of the FDCPA**

86.     The preceding paragraphs 1 through 85 are incorporated by reference as if set forth in full herein.

87.     Section 1692f(1) of the FDCPA prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

88.     The lawsuit filed by Encore against Mr. Williams falsely claims that Encore is entitled to collect the entire balance that Mr. Williams allegedly owed "COMENITY CAPITAL BANK/ MY BJS PERKS MASTERCARD." *See* Exhibit A.

89.     In reality, the putative debt that Encore is attempting to collect from Mr. Williams includes interest and fees far in excess of the 6% annual simple interest rate permitted by the LIPL.

90.     Encore's collection efforts are therefore unlawful and in violation of Section 1692f(1) the FDCPA.

91.     Mr. Williams and the other members of the Class are entitled to a judgment declaring (i) that Encore cannot legally purchase credit card debts allegedly owed by Pennsylvania residents to national banks and state-chartered, federally-insured banks and then attempt to collect such debts from these residents as if it were itself a national bank or state-

chartered bank; and (ii) that any attempt by Encore to collect such debts violates Section 1692f(1) of the FDCPA.

92.     Mr. Williams and the other members of the Class are entitled to a permanent injunction barring Encore from attempting to collect credit card debts originated by national banks and state-charted, federally-insured banks and allegedly owed by members of the Class.

93.     Mr. Williams and the other members of the Class are further entitled to actual damages and statutory damages of up to $500,000 from Encore pursuant to the FDCPA. 15 U.S.C. § 1692k(a)(1) & (2)(B).

94.     Such actual damages include any amounts members of the Class paid to Encore in satisfaction or partial satisfaction of credit card debts Encore claimed to be entitled to collect, as well as compensation for the emotional distress, anxiety and frustration that members of the Class suffered as a result of Encore's unlawful collection efforts.

95.     Mr. Williams and the other members of the Class are also entitled to an award of attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT III
### Acquisition and Collection of Debts Without Any Statutory Authority in Violation of the FCEUA and the UTPCPL

96.     The preceding paragraphs 1 through 95 are incorporated by reference as if set forth in full herein.

97.     The FCEUA "establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. § 2270.2.

98.     The FCEUA states that: "It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act." 73 P.S. § 2270.4(a).

99.     As set forth in Count I above, Encore violated Section 1692e of the FDCPA by acquiring and attempting to collect credit card debts without any authority to do so under Pennsylvania or federal law.  Encore therefore also violated the FCEUA.

100.     Moreover, the FCEUA prohibits any "creditor" from engaging in any "unfair or deceptive debt collection act or practice" in Pennsylvania, including by misrepresenting "the character, amount or legal status of any debt."  73 P.S. § 2270.4(b)(5)(ii).

101.     The FCEUA defines a creditor as a "person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom a debt is owed or alleged to be owed."  73 P.S. § 2270.3.

102.     Encore claims to be owed debts from Mr. Williams and the other the members of the Class, and is therefore a "creditor" in addition to being a debt collector.

103.     "If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under [the FCEUA], it shall constitute a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the [UTPCPL]."  73 P.S. § 2270.5(a).

104.     The UTPCPL permits plaintiffs in a private action to recover actual damages and permits the Court to "award up to three times the actual damages sustained," together with costs and attorney's fees.  73 P.S. § 201-9.2(a).

105.     Mr. Williams and the other members of the Class are entitled to a judgment declaring (i) that Encore cannot legally purchase credit card debts allegedly owed by Pennsylvania residents to national banks and state-chartered, federally-insured banks and then attempt to collect such debts from these residents as if it were itself a national bank or state-chartered bank; and (ii) that any attempt by Encore to collect such debts violates Section 2270.4(a) and (b)(5)(ii) of the FCEUA.

106.    Mr. Williams and the other members of the Class are entitled to a permanent injunction barring Encore from attempting to collect credit card debts originated by national banks and state-charted, federally-insured banks and allegedly owed by members of the Class.

107.    Mr. Williams and the other members of the Class are further entitled to an award of treble damages to compensate them for the emotional distress, anxiety and frustration as a result of Encore's unlawful collection efforts, and any amounts paid by Class members to Encore, plus costs and attorney's fees pursuant to 73 P.S. § 201-9.2(a).

**COUNT IV**
**Unlawful Collection of Debts in Violation of the FCEUA and the UTPCPL**

108.    The preceding paragraphs 1 through 107 are incorporated by reference as if set forth in full herein.

109.    Because violations of the FDCPA are likewise violations of the FCEUA, Encore's violation of Section 1692f of the FDCPA by attempting to collect unlawful and usurious interest in excess of the 6% annual simple interest rate permitted by the LIPL is also a violation of the FCEUA.

110.    In addition, the FCEUA prohibits a "creditor," such as Encore, from collecting or attempting to collect amounts not "permitted by law." 73 P.S. § 2270.4(b)(6)(i).

111.    A violation of the FCEUA is *per se* a violation of the UTPCPL. 73 P.S. § 2270.5(a).

112.    Therefore, Mr. Williams and the other members of the Class are entitled to a judgment declaring (i) that Encore cannot legally purchase credit card debts allegedly owed by Pennsylvania residents to national banks and state-chartered, federally-insured banks and then attempt to collect such debts from these residents as if it were itself a national bank or state-

23

chartered bank; and (ii) that any attempt by Encore to collect such debts violates Section 2270.4(a) and (b)(6)(i) of the FCEUA.

113.    Mr. Williams and the other members of the Class are entitled to a permanent injunction barring Encore from attempting to collect credit card debts originated by national banks and state-charted, federally-insured banks and allegedly owed by members of the Class.

114.    Mr. Williams and the other members of the Class are further entitled to an award of treble damages to compensate them for the emotional distress, anxiety and frustration as a result of Encore's unlawful collection efforts, and any amounts paid by Class members to Encore, plus costs and attorney's fees pursuant to 73 P.S. § 201-9.2(a).

**COUNT V**
**Engaging in Fraudulent and Deceptive Conduct in Violation of the UTPCPL,**
**73 P.S. §§ 201-2(xxi) & 201-3**

115.    The preceding paragraphs 1 through 114 are incorporated by reference as if set forth in full herein.

116.    Pursuant to the UTPCPL, "unfair or deceptive acts or practices in the conduct of any trade or commerce" are "hereby declared unlawful." 73 P.S. § 201-3.

117.    Such unfair or deceptive acts or practices include "[e]ngaging in any . . . fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(xxi).

118.    By suing and making other attempts to collect credit card debts allegedly owed by Pennsylvania residents to national banks and state-chartered, federally-insured banks, Encore fraudulent and deceptively represents to these residents that it has the legal authority to purchase and collect such debts when in reality Pennsylvania law prohibits this activity.

119.    These unfair and deceptive acts or practices by Encore occur in the conduct of trade or commerce, namely, the trade or commerce of purchase and collecting credit card debts allegedly owed by Pennsylvania residents.

120.    These unfair and deceptive acts or practices by Encore create confusion and misunderstanding in the Pennsylvania residents who are the victims of these acts or practices, because they are led to believe, wrongly, that Encore has the legal authority to collect these alleged debts, when it does not.

121.    Therefore, Mr. Williams and the other members of the Class are entitled to a judgment declaring (i) that Encore cannot legally purchase credit card debts allegedly owed by Pennsylvania residents to national banks and state-chartered federally insured banks and then attempt to collect such debts from these residents as if it were itself a national bank or state-chartered bank; and (ii) that any attempt by Encore to collect such debts violates Sections 201-2 and 201-3 of the UTPCPL.

122.    Mr. Williams and the other members of the Class are entitled to a permanent injunction barring Encore from attempting to collect credit card debts originated by national banks and state-charted, federally-insured banks and allegedly owed by members of the Class.

123.    Mr. Williams and the other members of the Class are further entitled to an award of treble damages to compensate them for the emotional distress, anxiety and frustration as a result of Encore's unlawful collection efforts, and any amounts paid by the Class members to Encore, plus costs and attorney's fees pursuant to 73 P.S. § 201-9.2(a).

## COUNT VI
### Collection of Interest in Violation of the LIPL, 41 P.S. §§ 502 and 504

124.    The preceding paragraphs 1 through 123 are incorporated by reference as if set forth in full herein.

125.    Encore has no legal authority to collect interest on credit card debt from Pennsylvania residents in excess of the 6% limit in the LIPL.  Encore Capital is not a national bank or state-chartered, federally-insured bank, nor does it have any license from the Department that authorizes it to collect payments of any sort, let alone interest in excess of LIPL's limit, from Pennsylvania residents.  Midland and MCM each have a sales finance company license, but such a license only authorizes the holder to collect 18% to 21% simple interest on installment sale contracts covering the retail sale of motor vehicles.  *See* 12 Pa. C.S. § 6243.

126.    Encore has violated the LIPL by suing Mr. Williams and other Pennsylvania residents and making other attempts to collect interest in excess of the LIPL's 6% cap.  As a result, Mr. Williams and other class members have had to suffer the frustration, emotional distress and other burdens of being sued, and many class members have unwittingly agreed to pay Encore for debts it has no legal authority to collect.

127.    The LIPL provides that "[a] person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges[.]"  41 P.S. § 502.  "Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges, shall be limited to a four-year period of the contract."  *Id.*

128.    The LIPL further provides that "[a]ny person affected by a violation of the act shall have the substantive right to bring an action on behalf of himself individually for damages by reason of such conduct or violation, together with costs including reasonable attorney's fees and such other relief to which such person may be entitled under federal law."  41 P.S. § 504.

*See also* 41 P.S. § 503 (providing an additional basis for an award of attorney's fees under the LIPL).

129.    Mr. Williams and all other Class members are entitled to judgment in their favor declaring that Encore cannot collect interest from Pennsylvania residents in excess of 6% on charged-off credit card accounts issued by national banks or state-chartered, federally-insured banks.

130.    Mr. Williams and all other Class members are further entitled to an injunction permanently barring Encore from attempting to collect interest from Pennsylvania residents in excess of 6% on charged-off credit card accounts issued by national banks or state-chartered, federally-insured banks.

131.    In addition, Mr. Williams and all other Class members are entitled to judgment in their favor awarding them damages they have suffered as a result of Encore's collection of, and attempts to collect, amounts from them in excess of the LIPL's 6% cap, including damages to compensate them for the emotional distress and other burdens of defending lawsuits against them that Encore had no legal right to file, and triple the amounts of interest paid by class members to Encore in excess of the LIPL's 6% limit, as well as an award of attorney's fees.

## PRAYER FOR RELIEF

Plaintiff William Lloyd prays that the Court enter judgement in his and all other Class members' favor and grant all appropriate relief, including, but not limited to:

a.   an Order certifying the Class as defined above in paragraph 56;

b.   a judgement pursuant to 28 U.S.C. § 2201 declaring that Encore cannot purchase and attempt to collect credit card debts allegedly owed by members of the Class to national banks and state-chartered, federally-insured banks;

c.   a permanent injunction barring Encore from purchasing and attempting to collect credit card debts allegedly owed by members of the Class to national banks and state-chartered, federally-insured banks;

d.  an award of actual damages in favor of Mr. Williams and the other members of the Class to compensate them, among other things, for the emotional distress, anxiety and frustration as a result of Encore's unlawful collection efforts, and any amounts paid by Class members to Encore, as set forth in Counts I and II above, plus statutory damages of $500,000, and costs and attorney's fees pursuant to 15 U.S.C. § 1692k(a);

e.  an award of treble damages in favor of Mr. Williams and the other members of the Class to compensate them, among other things, for the emotional distress, anxiety and frustration as a result of Encore's unlawful collection efforts, and any amounts paid by Class members to Encore, as set forth in Counts III and IV above, plus costs and attorney's fees pursuant to 73 P.S. § 201-9.2(a);

f.  an award of treble damages in favor of Mr. Williams and the other members of the Class to compensate them, among other things, for the emotional distress, anxiety and frustration as a result of Encore's unlawful collection efforts, and any amounts paid by Class members to Encore, as set forth in Count V above, plus costs and attorney's fees pursuant to 73 P.S. § 201-9.2(a)

g.  an award of damages in favor of Mr. Williams and the other members of the Class to compensate them, among other things, for the emotional distress, anxiety and frustration as a result of Encore's unlawful collection efforts, plus treble the amount of any interest paid to Encore by members of the Class in excess of 6% annual simple interest, as set forth in Count VI above, together with costs and attorney's fees pursuant to 41 P.S. §§ 502 and 504;

h.  plus all such other relief as the Court deems just and proper.

Stephanie Short (Pa. I.D. 324023)
Schnader Harrison Segal & Lewis LLP
Fifth Avenue Place, Suite 2700
120 Fifth Avenue
Pittsburgh, PA 15222

SAF2648
Ira Neil Richards (PA I.D. No. 50879)
Stephen A. Fogdall (PA I.D. No. 87444)
Schnader Harrison Segal & Lewis LLP
1600 Market St., Suite 3600
Philadelphia, PA 19103
(215) 751-2581
irichards@schnader.com
sfogdall@schnader.com

Dated:  November 7, 2019

EXHIBIT A



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

Patrick F. Dugan, President Judge   John J. Joyce, Deputy Court Administrator

## STATEMENT OF CLAIM

Code: Consumer Purchase - (4)                    SC/CP: # SC-19-04-15-5114

Midland Funding, LLC
2365 NORTHSIDE DRIVE Suite 300
San Diego, CA 92108

*Plaintiff(s)*

LLOYD WILLIAMS
1049 E PRICE ST
PHILADELPHIA, PA 19138

*Defendant(s)*

Service Address (Information) if other than above:

*To the Defendant: Plaintiff is seeking a money judgment against the Defendant(s) based on the following claim:*
Plaintiff is the owner of a certain credit card account (hereinafter "the Account") by virtue of the assignment of the account. As a result of the assignment, plaintiff now holds all rights, title and interest in and to the account. Upon information and belief, the defendant entered into a revolving credit card agreement with COMENITY CAPITAL BANK / MY BJS PERKS MASTERCARD, received a credit card for the account bearing the last 4 numbers of XXXXXXXXXXX-2417 and used or authorized the use of said card to for the purpose of obtaining goods and/or services and/or cash advances. Based upon records kept on behalf of plaintiff, the last payment posted to the account on January 18, 2018.  The account shows that the defendant owes a balance of $2,189.51 file number 19-87800.

## Summons to the Defendant
You are hereby ordered to appear at a hearing scheduled as follows:
### Citation al Demandado
Por la presenta, Usted esta dirijido a presentarse a la siguiente:

1339 Chestnut Street 6th Floor
Philadelphia, PA 19107
Hearing Room: 5

June 21st, 2019

10:00 AM

### Amount Claimed

| | | |
|---|---|---:|
| Principal | $ | 2189.51 |
| Interest | $ | 0.00 |
| Attorney Fees | $ | 0.00 |
| Other Fees | $ | 0.00 |
| Subtotal | $ | 2189.51 |
| Service | $ | 45.00 |
| State Fee | $ | 14.75 |
| Automation Fee | $ | 5.50 |
| Convenience Fee | $ | 5.00 |
| JCS St. Add. Surcharge | $ | 11.25 |
| JCS St. Add. Fee | $ | 2.25 |
| ATJ Fee | $ | 2.00 |
| ATJ Surcharge | $ | 10.00 |
| Court Costs | $ | 44.00 |
| **TOTAL CLAIMED** | $ | 2329.26 |

Date Filed: 04/15/2019

I am an attorney for the plaintiff(s), the plaintiff's authorized representative or have a power of attorney for the plaintiff(s) in this statement of claims action. I hereby verify that I am authorized to make this verification; that I have sufficient knowledge, information and belief to take this verification or have gained sufficient knowledge, information and belief from communications with the plaintiff or the persons listed below and that the facts set forth are true and correct to the best of my knowledge, information and belief.  I understand that this verification is made subject to the penalties set forth in 18 Pa. C.S. &sect; 4904, which concerns the making of unsworn falsifications to authorities.  If I am an authorized representative or have a power of attorney, I have attached a completed Philadelphia Municipal Court authorized representative form or a completed power of attorney form.

DANIEL J. SANTUCCI

Signature Plaintiff/Attorney
Atty ID #: 092800

Address & Phone

1 INTERNATIONAL PLAZA 5TH FLOOR
PHILADELPHIA, PA 19113
(484) 493-7704

NOTICE TO THE DEFENDANT, YOU HAVE BEEN SUED IN COURT.
PLEASE SEE ATTACHED NOTICES

AVISO AL DEMANDADO LE HAN DEMANDADO EN CORTE.  VEA POR FAVOR
LOS AVISOS ASOCIADOS.

If you wish to resolve this matter without appearing in court, please contact the attorney shown above immediately.



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

Patrick F. Dugan, President Judge        John J. Joyce, Deputy Court Administrator

# SC-19-04-15-5114

| Midland Funding, LLC<br>2365 NORTHSIDE DRIVE Suite 300<br>San Diego, CA 92108 | LLOYD WILLIAMS<br>1049 E PRICE ST<br>PHILADELPHIA, PA 19138 |
| --- | --- |
| *Plaintiff* | *Defendant(s)* |

## AFFIDAVIT OF NON-MILITARY SERVICE

The undersigned, being duly sworn according to law, deposes and says that he/she (is) (represents) the Plaintiff(s) in the above entitled case; that he/she is authorized to make this affidavit on behalf of the plaintiff(s); and that, to the best of his/her knowledge, the defendant(s) is/are not in the Military Service of The United States, nor any State or Territory thereof or its allies as defined in the Soldiers' and the Sailors' Civil Relief Act of 1940 and the amendments thereto.

I am an attorney for the plaintiff(s), the plaintiff's authorized representative or have a power of attorney for the plaintiff(s) in this statement of claims action. I hereby verify that I am authorized to make this verification; that I have sufficient knowledge, information and belief to take this verification or have gained sufficient knowledge, information and belief from communications with the plaintiff or the persons listed below and that the facts set forth are true and correct to the best of my knowledge, information and belief. I understand that this verification is made subject to the penalties set forth in 18 Pa. C.S. &sect; 4904, which concerns the making of unsworn falsifications to authorities. If I am an authorized representative or have a power of attorney, I have attached a completed Philadelphia Municipal Court authorized representative form or a completed power of attorney form.

_____
Signature – Plaintiff/Attorney

I hereby acknowledge receipt of the following affidavit forms, which I understand must be properly completed, notarized and presented to the Court at the Hearing:

☐   Medical Affidavit

☐   Repair Affidavit

☐   Affidavit of Service By Mail

_____
Signature – Plaintiff/Attorney

9-01/16/02



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107
Patrick F. Dugan, President Judge     John J. Joyce, Deputy Court Administrator

# SC-19-04-15-5114

| | |
|---|---|
| Midland Funding, LLC<br>2365 NORTHSIDE DRIVE Suite 300<br>San Diego, CA 92108 | LLOYD WILLIAMS<br>1049 E PRICE ST<br>PHILADELPHIA, PA 19138 |
| *Plaintiff* | *Defendant(s)* |

## IMPORTANT NOTICE TO ALL PARTIES



THE MUNICIPAL COURT COMPLIES WITH THE AMERICANS WITH DISABILITIES ACT WHICH REQUIRES THAT ALL COURT SERVICES AND FACILITIES BE ACCESSIBLE TO PERSONS WITH DISABILITIES ON AN EQUAL BASIS TO THOSE WITHOUT DISABILITIES. IF YOU HAVE A DISABILITY, AND REQUIRE REASONABLE ACCOMMODATIONS TO FILE A CLAIM, PARTICIPATE IN A MUNICIPAL COURT PROCEEDING, OR USE ANY SERVICE PROVIDED BY THE COURT, PLEASE CALL 215-686-7986. REQUESTS FOR REASONABLE ACCOMMODATIONS MUST BE MADE AT LEAST (3) THREE BUSINESS DAYS BEFORE ANY HEARING, OR WITHIN (3) THREE BUSINESS DAYS AFTER SERVICE (DELIVERY) OF THE NOTICE OF THE HEARING, WHICHEVER IS LATER.

## NOTA IMPORTANTE PARA TODO PERSONAS



LA CORTE MUNICIPAL CUMPLE CON EL DECRETO DE AMERICANO INCAPACITADOS (AMERICANS WITH DISABILITIES ACT). ESTE DECRETO REQUIRE QUE TODOS LOS SERVICIOS Y FACILIDADES DE CORTE SEAN ACCESIBLE. A PERSONAS INCAPACITADAS, AL IGUAL QUE PERSONAS NO INCAPACITADAS. SE USTED ESTE INCAPACITADO Y NECESITA ACOMODACIONES RAZONABLES, PARA PODER RADICAR UNA DEMANDA, PARTICIPAR EN ALGUN PROCEDIMIENTO O UTILIZAR SERVICIOS EN LA CORTE MUNICIPAL POR FAVOR LLAME AL TELEFONE 215-686-7986. PARA SOLICITAR ACOMODACIONES RAZONABLES, DEBE LAMAR POR LO MENOS TRES DIAS DE TRABJO ANTES DE SU AUDIENCIA O DENTRO DE TRES DIAS DESPUES DE RECIBIR SU CITA, SEGUN O QUE OCURRA PRIMERO.

300-12/10/02



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107
Patrick F. Dugan, President Judge  John J. Joyce, Deputy Court Administrator

Court Room        5        at    10:00 AM    on    06/21/2019

#    SC-19-04-15-5114

Midland Funding, LLC
2365 NORTHSIDE DRIVE Suite 300
San Diego, CA 92108

LLOYD WILLIAMS
1049 E PRICE ST
PHILADELPHIA, PA 19138

*Plaintiff*                                              *Defendant(s)*

*Defendant #:*  2355987

## NOTICE TO DEFEND

You have been sued in Philadelphia Municipal Court. If you intend to enter a defense

to this Statement of Claim or Counterclaim you must:

    1. Sign the notice where indicated below, and
    2. Return in the self-addressed and stamped envelope provided.

If you fail to return this notice, and you appear in Court at the time and date specified in this Notice, your case may be given a new hearing date.

If you fail to appear in Court for your hearing, a judgment will be entered against you by default.

On _____ I, the undersigned Party, will appear at the hearing in the above to defend my case.

I, the undersigned Party, hereby verify that I am authorized to make this verification and that the facts set forth above are true and correct to the best of my knowledge, information, and belief. I understand that this verification is made subject to the penalties set forth in 18 Pa. C.S. § 4904, which concerns the making of unsworn falsifications to authorities.

_____                    _____
Signature of Party                          Telephone Number

*Return in the self-addressed and stamped envelope provided*

74-07/01/01



10003-2524665-10-bb

Verification

Dalaney Young, whose business address is 16 McLeland Road Suite 101, St. Cloud, MN 56303, certifies and says:

1.      I am an officer for MIDLAND FUNDING LLC and have access to pertinent account records for Midland Credit Management, Inc. ("MCM"), servicer of this account on behalf of Plaintiff. I am a competent person over eighteen years of age, and make the statements herein based upon personal knowledge of those account records maintained on Plaintiff's behalf. Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to LLOYD WILLIAMS'S (Defendant) COMENITY CAPITAL BANK account XXXXXXXXXXXX2417 (MCM Number 8579869272) (hereinafter "the account"). I have access to and have reviewed the electronic records pertaining to the account maintained by MCM and am authorized to make this affidavit on Plaintiff's behalf. The electronic records reviewed consist of data acquired from the seller when Plaintiff purchased the account, together with records generated by MCM in connection with servicing the account since the date the account was purchased by Plaintiff.

2.      Based upon my review of the business records: 1) Defendant(s) opened the COMENITY CAPITAL BANK account on 2016-03-22; 2) the last payment posted to the account on 2018-01-18; and 3) the account was charged off on 2018-03-18.

3.      The business records show that Defendant(s) owed a balance of $2,189.51 as of 2019-03-20.

4.      On or about 2018-03-30, the account was sold from COMENITY CAPITAL BANK by and through its legal selling entity COMENITY CAPITAL BANK to Midland Funding LLC. The account was then sold to the following debt buyers in order of occurrence on or about:

        Not Applicable

I certify under penalty of perjury that the foregoing statements are true and correct. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

MAR 2 5 2019
Date

Dalaney Young

CA137
Internal Legal ILMS



8579869272



AFFRECORD



19-87800



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

## WHAT TO DO IF YOU RECEIVE A NOTICE (STATEMENT OF CLAIMS) THAT YOU ARE BEING SUED IN SMALL CLAIMS COURT

1. Read and understand the Statement of Claim. You are the Defendant; the person, group or corporation suing you is the Plaintiff. If after reading the Statement of Claim you feel you are in the right, then:

2. Gather all pertinent documents to present your defense; that is, letters, cancelled checks, bills of sale, letters of notification, account books, and paid bill receipts. Also notify any witnesses you want to speak on your behalf at the hearing.

3. You as an individual are not required to have an attorney represent you. Only corporations and unincorporated associations in cases in excess of $2,500.00 must be represented by an attorney. In cases of $2,500.00 or less, a corporation or unincorporated association may be represented by an officer who has documentation of such status.

4. PLAN TO ATTEND THE HEARING to present your defense and any counterclaims (that is, your claim against the plaintiff to offset his/her claim against you). If you have a counterclaim, call 215-686-7987 for further information. In most cases, if the defendant does not appear, the judge will decide in favor of the person who is suing. That is called a Default Judgment. (Check the Statement of Claim for location, date, and time for the hearing).

5. Notice to Defend -- If your copy of the complaint has a Notice to Defend form attached to it, and you plan to attend the hearing and present your defense, you should do the following: (1) fill out both copies of the form and put one in the attached self-addressed and stamped envelope and mail it; and (2) bring the other copy with you when you attend the hearing. If you fail to do the above and attend your hearing, your case may be continued. If you comply with the above and the plaintiff fails to appear at the hearing, a judgment shall be entered in your favor.

6. If you admit the claim and want to settle as soon as possible, notify the plaintiff immediately. If you admit the claim but need time to pay the money owed, you must appear in person on the day set for the hearing, state to the Court that you need time to pay, and your reasons.

IF THERE IS ANYTHING ON THE STATEMENT OF CLAIM THAT YOU DO NOT UNDERSTAND, FEEL FREE TO NOTIFY THE SMALL CLAIMS COURT OFFICE, 1339 CHESTNUT STREET, ROOM 1000, PHILADELPHIA, PA 19107.
If you have a disability and require assistance in order to participate in a Municipal Court proceeding, please contact us at 215-686-7986.

## AT THE HEARING

The courtroom procedure is simple and informal. You should appear in Court in the designated room on the time and date specified. Bring the copy of the complaint with you plus all documents for your defense. Be certain to check carefully the courtroom to which your case is assigned and go to the proper room. The proceedings begin with a roll call of cases to be heard during that session.

As each case is called, the parties involved step forward and are sworn in. At this point, plaintiff and defendant merely tell their stories in plain language to the Judge. After hearing both sides, the Judge will make a decision.

When you state your case:
      Give the facts clearly. Present pertinent documents and witnesses. Stay calm, do not get excited.
IF YOU WIN (the judgment or final order is in your favor), the plaintiff has 30 days to appeal.
IF YOU LOSE

1. You can appeal within 30 days by filing a Notice of Appeal in Room 280 City Hall, a copy of which must be filed immediately in Court Administration, 1339 Chestnut Street, Room 1020, Philadelphia, PA 19107. Be prepared to get a lawyer at this point, however, because the case will go to the Court of Common Please with more stringent rules to be followed. OR 2. You must satisfy the judgment, that is, do as the judge ordered within 30 days.

## AFTER THE HEARING

TO SATISFY THE JUDGMENT

1. The plaintiff must sign and give you an ORDER TO SATISFY, which you must file with the Prothonotary within thirty days after the payment. This ORDER is a document to prove that he/she has been paid and it is necessary to remove the judgment from record. You should retain a copy for your records.

IF YOU DO NOT APPEAL AND REFUSE TO PAY THE JUDGMENT WITHIN 30 DAYS

1. The plaintiff may execute on the judgment. This means that the plaintiff takes action through the Sheriff's Office. The sheriff may put a levy on your property, which means he can list your personal belongings to be sold at auction at a Sheriff's Sale in order to pay off the judgment. If the plaintiff resorts to this, you will have to pay the Sheriff's costs along with the other monies owed. You will be advised that your goods may be sold if you do not satisfy the plaintiff within 15 days.

2. The plaintiff can also try to collect from your bank account.

\*\*\*\*\*\*\*\*\*\*\*\*
### REMEMBER

* Read and understand the STATEMENT OF CLAIM.
* You do not need a lawyer in Municipal Court -- unless you are a Corporation or Unincorporated Association, and your case is for more than $2,500.00. ATTEND THE HEARING to avoid a default judgment -- and to tell your side of the story.
* If you lose, you can appeal to the Court of Common Pleas within 30 days.
* Small Claims Court begins promptly at the time specified on the front of this complaint. Be certain to allow yourself sufficient time to arrive at Court on time.
* If you have any questions, call or visit the Small Claims Court Office.

Small Claims Court
A Division of Municipal Court
1339 Chestnut Street, Room 1000
Philadelphia, PA 19107
Monday through Friday
(215)686-7987   (215)686-7988



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

# SC-19-04-15-5114

| | |
|---|---|
| Midland Funding, LLC<br>2365 NORTHSIDE DRIVE Suite 300<br>San Diego, CA 92108 | LLOYD WILLIAMS<br>1049 E PRICE ST<br>PHILADELPHIA, PA 19138 |
| *Plaintiff* | *Defendant(s)* |

## ELECTRONIC CASE ACCESS ACCOUNT REGISTRATION

As per the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts,* you have the ability to register for full, unrestricted access to the case mentioned in the above caption.

To register for access to this case you can visit https://fjdclaims.phila.gov

If you do not currently have an account, you may register for one at the above link. You will be required to provide the following information:

# Case Participant ID: 10323965

# Registration ID:

If you already have an account, you may login at the above link and click on the "Manage My Cases" menu item. You will be required to provide the above information along with the case number.



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

Patrick F. Dugan, President Judge   John J. Joyce, Deputy Court Administrator

# SC-19-04-15-5114

| | |
|---|---|
| Midland Funding, LLC<br>2365 NORTHSIDE DRIVE Suite 300<br>San Diego, CA 92108 | LLOYD WILLIAMS<br>1049 E PRICE ST<br>PHILADELPHIA, PA 19138 |
| *Plaintiff* | *Defendant(s)* |

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:  DANIEL J. SANTUCCI

Signature:     DANIEL J. SANTUCCI

Name:  DANIEL J. SANTUCCI

Attorney No. (if applicable): 092800

# Notice of Language Rights



1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107
Elizabeth McCarrick 215-683-8000
languageaccesscoordinator@courts.phila.gov

**English:** You have the right to an interpreter at no cost to you. To request an interpreter, please inform court staff using the contact information provided at the top of this notice.

**Spanish/Español:** Usted tiene derecho a un intérprete libre de costo. Para solicitar un intérprete favor de informárselo al personal judicial utilizando la información provista en la parte superior de este aviso.

**Mandarin/Cantonese Simplified Chinese/普通话/粤语简体中文:** 您有权获得免费的口译员服务。若需要口译员，请使用本通知上方提供的联系信息通知法院工作人员。

**Mandarin/Cantonese Traditional Chinese/普通話/廣東話繁體中文:** 您有權要求免費傳譯服務。如欲要求傳譯服務，請參閱本通知頂部的聯絡資料，通知法庭職員。

**Arabic/العربية :** يحق لك الحصول على مترجم دون دفع أي تكلفة من جانبك. لطلب مترجم، يُرجى إعلام موظفي المحكمة باستخدام معلومات الاتصال المقدمة في الجزء العلوي من هذا الإشعار.

**Russian/Русский:** У вас есть право на бесплатные услуги переводчика. Заявка на переводчика подается в суд по адресу, телефону или эл. почте, указанными выше в заголовке этого уведомления.

**Vietnamese/Tiếng Việt:** Quý vị có quyền được một thông dịch viên giúp mà không tốn chi phí nào cả, xin hãy báo cho nhân viên tòa án dùng thông tin liên lạc có ở trên đầu thông báo này.

**Nepali/नेपाली:** तपाईंको निःशुल्क रूपमा भाषा अनुवादक राख्न पाउने अधिकार छ। अनुवादकको लागि अनुरोध गर्न, यस सूचनाको माथि दिइएको सम्पर्क जानकारी भरेर अदालतका कर्मचारीहरूलाई जानकारी दिनुहोस्।

**Korean/한국어:** 귀하는 비용에 대한 부담 없이 통역 서비스를 받을 권리가 있습니다. 통역 서비스를 요청하려면 본 통지서의 상단에 기재된 연락처를 통해 법원 직원에게 알리십시오.

**Polish/Polski:** Ma Pan/Pani prawo do nieodpłatnego skorzystania z usług tłumacza ustnego. Aby zwrócić się o wsparcie ze strony tłumacza ustnego, proszę skontaktować się z pracownikami sądu, korzystając z danych znajdujących się w górnej części niniejszego dokumentu.

**Punjabi/ پنجابی /Pakistan:** تہاڈے کول بغیر ادائیگی کیتیاں اک مترجم حاصل کرن دا حق اے۔ مترجم دی درخواست کرن لئی، میربانی کر کے ایس نوٹس دے اوتے فراہم کیتیاں رابطے دیاں معلومات نوں ورتدیاں عدالت دے عملے نوں اطلاع دیوو۔

**Punjabi/ਪੰਜਾਬੀ /India:** ਤੁਹਾਨੂੰ ਇਕ ਦੁਭਾਸ਼ੀਆ ਰਾਹਜ਼ ਕਰਨ ਦਾ ਹੱਕ ਹੈ, ਜਿਸ ਦੀ ਤੁਹਾਨੂੰ ਕੋਈ ਲਾਗਤ ਨਹੀਂ ਲੱਗੇਗੀ। ਦੁਭਾਸ਼ੀਏ ਲਈ ਬੇਨਤੀ ਕਰਨ ਵਾਸਤੇ, ਕਿਰਪਾ ਕਰ ਕੇ ਅਦਾਲਤ ਦੇ ਅਮਲੇ ਨੂੰ ਜਾਣੂ ਕਰਵਾਓ ਤੇ ਇਸ ਲਈ ਇਸ ਨੋਟਿਸ ਦੇ ਸਿਖਰ ਉੱਤੇ ਦਿੱਤੀ ਸੰਪਰਕ ਜਾਣਕਾਰੀ ਦਾ ਇਸਤੇਮਾਲ ਕਰੋ।

**Portuguese/Português:** Você tem direito a um intérprete gratuitamente. Para solicitar um intérprete, informe à nossa equipe usando os dados de contato mostrados na parte superior deste aviso.

**Somali/Soomaali:** Waxaad xaq u leedahay in lagu turjumo lacag la'aan ah. Si aad u codsato turjumaanka, fadlan u sheeg maxkamadda shaqaalaha adiga oo isticmaala macluumaadka ciwaanka kor lagu siiyay ee ogeysiiskaan.

**Haitian Creole/Kreyòl Ayisyen:** Ou gen dwa resevwa sèvis yon entèprèt gratis. Pou mande pou yon entèprèt, tanpri fè manm pèsonèl tribinal la konnen lè ou sèvi avèk enfòmasyon an yo te bay ou nan tèt avi sa a.

**French/Français:** Vous avez le droit de bénéficier gratuitement de l'assistance d'un interprète. Pour en faire la demande, veuillez en informer le personnel du tribunal à l'aide des coordonnées indiquées en haut de page.