**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

LLOYD WILLIAMS, *on behalf of himself*              :
*and all others similarly situated*,                        :
                       Plaintiff,                     :
                                       :
                      v.                            :        Civil No. 2:19-cv-05252-JMG
                                       :
ENCORE CAPITAL GROUP, INC.,                         :
MIDLAND CREDIT MANAGEMENT,                     :
INC., AND MIDLAND FUNDING LLC,                  :
                     Defendants.                  :
_____

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                    **December 18, 2020**

**I.    OVERVIEW**

      Before the Court is a Motion to Compel Arbitration filed by Defendants Encore Capital

Group, Inc. ("Encore"), Midland Credit Management, Inc. ("Midland Credit Management"), and

Midland Funding, LLC ("Midland Funding") (collectively "Defendants"), pursuant to the

Federal Arbitration Act, 9 U.S.C. § 3 (ECF No. 18).  Plaintiff Lloyd Williams ("Plaintiff")

opposes this motion.  (ECF No. 22).[1]  The primary issue is whether Defendants assumed the

right to enforce the arbitration provision contained within a credit card account agreement (the

"Agreement") between Plaintiff and Comenity Capital Bank ("Comenity") when they purchased

the rights to Plaintiff's account ("the Account") from Comenity.  For the reasons set forth below,

the Court finds that assignees were not included within the definition of parties who could

enforce the arbitration provision.  Accordingly, Defendants' Motion is denied.

---

[1] In adjudicating this Motion, the Court also considered Defendants' Reply to Plaintiff's Response (ECF No. 24) and
Plaintiff's Sur-Reply in Opposition to Defendants' Motion to Compel Arbitration (ECF No. 29).

## II.    FACTUAL BACKGROUND

### A.    Allegations

In March 2016, Plaintiff Lloyd Williams received a My BJ's Perks Mastercard after purportedly accepting a "pre-screen" offer from Comenity Capital Bank.  Pl.'s Resp. 4; Defs.' Mot. 1.  Plaintiff began making purchases with the card until his employer reduced him to part-time status and he was no longer able to make the minimum payments on his outstanding balance.  Compl. ¶ 9, ECF No. 1; Defs.' Mot., Ex. A-3.  Comenity thereafter charged off [2] Plaintiff's account and sold it to Defendant Midland Funding on March 30, 2018.  Defs.' Mot., Ex. A-5.  Upon acquisition of the Account, Defendant Midland Funding engaged Defendant Midland Credit Management to service the account.  *Id.* at 2.  Midland Credit Management later brought suit against Plaintiff in Philadelphia Municipal Court to recover the charged-off debt, and on November 20, 2019, withdrew the suit without prejudice.  Compl. ¶ 49; Pl.'s Resp., Ex. 1.

In response to Defendants' lawsuit, Plaintiff filed a class action lawsuit in federal court alleging that Defendants violated federal and state law by attempting to collect credit card debt encompassing interest rates above which Defendants were authorized to charge.  *See generally* Compl.  Defendants subsequently filed this Motion to Compel Arbitration, arguing that they assumed the right to enforce the arbitration provision contained within the credit card agreement between Plaintiff and Comenity when they purchased the rights to Plaintiff's Account from Comenity.  Plaintiff counters that the specific language of the arbitration agreement precludes

---

[2] The debtor's account is reported as bad debt and the creditor commences collection activities.  *See* Defs.' Mot., Ex. A-4.

Defendants from enforcing it, thus no agreement to arbitrate exists between the Parties.[3]

### B.     Procedural History

Plaintiff filed a Class Action Complaint against Defendants requesting declaratory and injunctive relief under the Fair Debt Collection Practices Act (FDCPA), Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA), Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), and Pennsylvania's Loan Interest Protection Law (LIPL) on November 7, 2019.  Following a limited discovery period which concluded on March 16, 2020 (ECF No. 15),[4]  Defendants filed a Motion to Compel Arbitration on March 30, 2020.  On April 22, 2020, Plaintiff filed his Response.  On May 6, 2020, Defendants filed their Reply and on October 26, 2020, the Court granted Plaintiff leave to file a Sur-Reply (ECF No. 28).  The Court heard oral argument on the Motion on December 16, 2020 (ECF No. 31).

## III.    LEGAL STANDARD

### A.     Standard for Motion to Compel Arbitration

A motion to compel arbitration is governed either by the motion to dismiss standard of Fed. R. Civ. P. 12(b)(6) or the motion for summary judgment standard under Fed. R. Civ. P. 56. *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 771, 772 (3d Cir. 2013).  The Rule 12(b)(6) standard applies "when it is apparent on the face of the complaint…that certain party's claims are subject to an enforceable arbitration clause."  *Id.* at 776.  The Rule 56 standard applies "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue" thereby entitling the parties "to discovery on the question of arbitrability before a court entertains further briefing on [the] question."  *Id.*  Plaintiff

---

[3] Plaintiff raises four grounds of objection to Defendants' Motion.  *See* Pl.'s Resp. 2-3.  However, because the Court finds Plaintiff's objection concerning Defendants' right to enforce the arbitration provision to be dispositive, it will not consider the other objections.
[4] This case was reassigned to this Court on March 2, 2020 (ECF No. 16).

has "come forth with enough evidence…to place the question in issue" and the Parties have already undertaken discovery regarding the arbitrability of this case. *Id.* at 774. Therefore, the Court will review Defendants' Motion to Compel Arbitration under a summary judgment standard. *See White v. Sunoco Inc.*, 189 F. Supp. 3d 486, 491 (E.D. Pa. 2016). Under this standard, the motion to compel should be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.   Federal Arbitration Act and Applicable State Law

The Federal Arbitration Act (FAA) provides that "a written provision in any…contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract…shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. This language contemplates a "strong federal policy" in favor of resolving disputes through arbitration by enforcing parties' arbitration agreements. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010). The court must be satisfied that an arbitration agreement exists between the parties before enforcing arbitration. *AT&T Technologies., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

"[C]hallenges to an arbitration agreement's validity are presumed to be questions for judicial determination." *Guidotti*, 716 F.3d at 774. In deciding whether to grant a motion to compel arbitration, the court must determine "whether (1) there is an agreement to arbitrate and (2) whether the dispute falls within the scope of the agreement." *ACE American Insurance Company v. Guerriero*, 738 Fed. App'x. 72, 77 (3d Cir. 2018). If the court decides both

questions in the affirmative, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Notwithstanding the strong presumption of arbitrability, the FAA does not "alter background principles of state contract law regarding the scope of agreements" or which parties are bound by their terms. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630 (2009). Arbitration agreements are "creatures of contract", meaning courts must apply state law principles of contract formation to determine whether the parties have agreed to arbitrate. *AT&T Technologies*, 475 U.S. at 648; *Moon v. Breathless Inc.*, 868 F.3d 209, 213 (3d Cir. 2017). As a general principle of contract law, genuine issues of contract construction can be resolved by the court as a matter of law. *John F. Harkins Co. v. Waldinger Corp.*, 796 F.2d 657, 659 (3d Cir. 1986). The Agreement in this case stipulates, as the Parties do not dispute, that Utah law governs the interpretation and construction of this contract. Defs.' Mot. 8; Pl.'s Resp. 6. Pennsylvania courts generally honor the parties' choice of law provisions during contract disputes, and the Court will apply Utah law to determine whether an agreement to arbitrate exists between the Parties. *DL Resources, Inc. v. FirstEnergy Solutions Corp.*, 506 F.3d 209, 216 (3d Cir. 2007) (citing *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 920 (Pa. Super. 2002)).

## IV.   ANALYSIS

The "principle purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989). Parties are "generally free to structure their arbitration agreement as they see fit." *AT&T Technologies*, 475 U.S. at 648-49. Accordingly, parties to an arbitration agreement may specify with whom they choose to arbitrate

disputes. *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 683 (2010). Absent a contractual basis for concluding that they agreed to arbitrate under the FAA, a party may not be compelled to do so. *Id.*

Litigants who were not a party to the original arbitration agreement may nevertheless invoke Section 3 of the FAA if the applicable state law permits them to enforce it. *Arthur Anderson*, 556 U.S. at 632.   Under Utah law, only parties to a contract may enforce the rights and obligations created therein. *Fericks v. Lucy Ann Soffe Trust*, 100 P.3d 1200, 1206 (Utah 2006).   A party who does not possess the right to compel arbitration will not stand to benefit from the court's "liberal interpretation of the arbitration provisions themselves." *See Cade v. Zions First Nat. Bank*, 956 P.2d 1073, 1077 (Utah Ct. App. 1998) (quoting *Reed v. Davis County Sch. Dist.*, 892 P.2d 1063, 1065 (Utah Ct. App. 1995)).   However, in certain circumstances, a nonsignatory may enforce or be bound by an arbitration agreement. *Ellsworth v. Am. Arbitration Ass'n*, 148 P.3d 983, 990 n. 11 (Utah 2006).   These circumstances include (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing or alter ego doctrine; and (5) estoppel. *Id.*

Defendants argue that as the assignee of Plaintiff's Account, Midland Funding is entitled to all of the rights in the Agreement between Plaintiff and Comenity Bank. Defs.' Mot. 4.   They assert that this includes the right to compel arbitration set forth in Section I.C of the Agreement, which provides:

> …
>
> 6.   IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM.]
>
> 7.   IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE

ARBITRATION, EITHER AS A PLAINTIFF, DEFENDANT, OR CLASS MEMBER.

…

*Id.*, Ex. A-2.  Defendants next point to Section E of the Agreement, which says, "We may transfer or assign your Account and/or any of our rights under this Agreement, to another person or entity at any time without prior notice to you or your consent."  *Id.*  They contend that Comenity exercised this right in the Bill of Sale between Comenity and Midland Funding, which states in relevant part:

> Comenity Capital Bank ("Seller"), for value received and pursuant to the terms and conditions of Credit Card Account Purchase Agreement Dated April 28, 2017 between Seller and Midland Funding LLC ("Purchaser"), its successors and assigns ("Credit Card Account Purchase Agreement"), hereby assigns effective as of the Closing Date of March 30, 2018 all rights, title and interest of Seller in and to those Charged-off Accounts described in Exhibit 1 (Asset Schedule) attached hereto and made part hereof for all purposes.

> *Id.*, Ex. A-5.

Defendants assert that this language evidences Comenity's intent to assign *all* rights, title, and interest in and to the Account to Midland Funding, including the right to compel arbitration. *Id.* at 11.  To further bolster their position, Defendants offer the affidavit of a Comenity representative, who states that Comenity "sold and assigned all rights, title and interest in the Account to Midland Funding, LLC in March 2018."  *Id.*, Ex. A ¶ 16.  Defendants argue that as assignee, Midland Funding "stands in the shoes" of Comenity and has "right and liabilities identical to those of its assignor."  *Id.* at 11 (quoting *CCAM Enters., LLC v. Dep't of Comm.*, 324 P.3d 648, 650 (Utah Ct. App. 2014)).

Plaintiff counters that Defendants did not assume the right to compel arbitration because the parties specifically identified as those who may enforce the arbitration provision do not include assignees.  Pl.'s Resp. 11.  Plaintiff observes that in Section A of the Agreement, the

7

terms "we," "us," and "our" are defined as "Comenity Capital Bank *and any successor or assign*." Defs.' Mot., Ex. A-2 (emphasis added). Conversely, the arbitration provision itself, states in Section I.C.2:

**2. Parties Subject to Arbitration:**

Solely as used in this Arbitration Provision (and not elsewhere in this Agreement), the terms "we," "us," and "our" mean (a) Comenity Capital Bank, any parent, subsidiary, or affiliate of the Bank and the employees, officers and directors of such companies (the "Bank Parties"); and (b) any other person or company that provides any services in connection with this Agreement if you assert a Claim against such other person or company at the same time you assert a Claim against any Bank Party.

Defs.' Mot., Ex. A-2. Based on this language, Plaintiff argues that, as used in the arbitration provision, the terms "we," "us," and "our" do not include a successor or assign of Comenity. Pl.'s Resp. 10. Plaintiff asserts that had the parties intended to permit assignees to invoke the arbitration provision, they would not have specifically redefined the terms in that provision to exclude assignees from the definition of "we," "us," and "our." *Id.* Taking this into account, Midland Funding (as an assignee of Comenity) is not a "we," as defined by the arbitration provision. *Id.* Therefore, Plaintiff argues, when Midland Funding purchased "all rights, title and interest" of Comenity, those rights were necessarily limited to exclude the right to compel arbitration. *Id.* The Court finds Plaintiff's arguments both compelling and supported by the applicable state law.

The Utah Supreme Court has noted that "[w]ell-accepted rules of contract interpretation require that we examine the language of a contract to determine the meaning and intent." *Glenn v. Reese*, 225 P.3d 185, 188 (Utah 2009). Where the contract language is unambiguous, "the parties' intentions are determined from the plain meaning of the contractual language." *Id.* Courts must interpret each contract provision as it relates to all others, "with a view toward giving effect to all and ignoring none." *Id.* "[S]pecific provisions ordinarily will be regarded as

qualifying the meaning of broad general terms in relation to a particular subject." *CoBon Energy, LLC v. AGTC, Inc.*, 264 P.3d 219, 224 (Utah Ct. App. 2011) (quoting *Eighth North-Val, Inc. v. Parkinson Pension Trust*, 773 A.2d 1248, 1255 (Pa. Super. 2001)).  Likewise, conflicts between general and specific provisions must be resolved in favor of the specific provisions.  *Hussein v. UBS Bank USA*, 446 P.3d 96, 107 (Utah Ct. App. 2019).

Here, the arbitration provision's definition of "we," which does not include assignees, qualifies the Agreement's general definition of "we," which includes "any successor or assign." When reading the terms of the Agreement as they relate to all others, the broad definition of "we" in the general definitions section is limited by the more specific definition of "we" in the arbitration provision.  *See Hussein*, 446 P.3d at 107 (explaining that "general terms and provisions are restricted by specific terms and provisions following them").  This provided for a narrower definition of who could compel arbitration under the terms of the Agreement.  Since the term "we," as defined by the arbitration provision, is inconsistent with the term "we," as defined in the general definitions provision, the Court gives effect to the specific definition included in the arbitration provision.  As a result, the Court finds that assignees were not included within the definition of parties who could enforce the arbitration provision.

Defendants urge the Court to disregard the distinction between these two provisions and hold that Midland Funding replaced Comenity throughout the entire Agreement.  Defs.' Reply 5. They argue that because they purchased *all* of Comenity's rights, title, and interest in the

Account, they became a "Bank Party" as defined by the arbitration provision.[5]  *Id.* at 4.  But this position cannot be reconciled with the applicable state law.  When interpreting contracts, Utah courts "look for a reading that harmonizes the provisions and avoids rendering any provision meaningless."  *Fisher v. Davidhizar*, 436 P.3d 123, (Utah Ct. App. 2018) (citing *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 210 P.3d 263, 269 (Utah 2009)).  If the definition of "we" in the arbitration provision included assignees, it would be entirely unnecessary to include "successor and assign" in the definition of "we" in the general definitions section, while excluding those terms from the definition of "we" in the arbitration provision.  *Cf. Wagner v. Clifton*, 62 P.3d 440, 443 (Utah 2002) (holding that arbitration policy could only be invoked by parties to whom enforcement rights were specifically granted).  Finding for Defendants would render the general provision defining "we" entirely superfluous.  *Cf. Wojcik v. Midland Credit Management, Inc.*, No. 18-cv-3628, 2019 WL 3423567 (E.D.N.Y. July 30, 2019) (interpreting Utah law to hold that specific contract language prevented assignee from replacing assignor in arbitration provision solely by virtue of assignment).

Defendants also direct the Court to an array of cases throughout the Third Circuit to reinforce their assertion that "arbitration rights are enforceable by assignees."  Defs.' Reply 5-6.  But that principle is not at issue in this case nor does this Court advance an assertion to the contrary.  The issue in this case is whether generally assignable rights, including the right to

---

[5] Defendants urge the Court to adopt the holding in *Dotson v. Midland Funding, LLC*, that the assignee "substituted Comenity as the enforcer of the arbitration provision" once Comenity sold its rights under the Agreement.  No. 18-cv-16253, 2019 WL 5678371, at *6 (D.N.J. Aug. 1, 2019).  The *Dotson* court predicated its ruling almost entirely on the holding in *Clemons v. Midland Credit Management, Inc.*, No. 1:18-cv-16883, 2019 WL 3336421 (D.N.J. July 25, 2019).  In *Clemons*, the court held that "[t]he failure of the 'Parties Subject to Arbitration' provision to refer expressly to assignees is not a legal bar to an otherwise valid assignment."  *Id.* at *4.  While *Dotson* and *Clemons* involved similar parties and the same contract language at issue here, neither case addressed the specific issue Plaintiff raises in the instant case: whether, under Utah state law, the specific language of the 'Parties Subject to Arbitration' provision restricts the general definition section by not including assignees, thereby precluding assignees from enforcing the arbitration provision.

enforce an arbitration agreement, are restricted by specific contract language which limits the parties who can enforce those rights to the exclusion of assignees.  As applied to the facts of this case, the Court finds that they are.

## V.      CONCLUSION

You cannot sell what you do not own.  Nor can an assignee acquire greater rights than those held by the assignor.  Under the terms of the arbitration provision in this case, assignees were not included amongst those who could enforce its terms.  The Court therefore finds that Defendants have failed to carry their burden of showing that there is no genuine dispute as to whether a binding arbitration agreement exists between the Parties.  Accordingly, Defendants' Motion to Compel Arbitration is denied.  An appropriate Order follows.


BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge