**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LLOYD WILLIAMS, *on behalf of himself and all others similarly situated,* | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| ENCORE CAPITAL GROUP, INC., MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC, | : | Civil Action No.: 2:19-cv-05252-JMG |
| Defendants. | : | |

**PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE**

Ira Neil Richards (PA I.D. No. 50879)
Stephen A. Fogdall (PA I.D. No. 87444)
Layal A. Issa (PA I.D. No. 329214)
Schnader Harrison Segal & Lewis LLP
1600 Market St., Suite 3600
Philadelphia, PA 19103
(215) 751-2581
irichards@schnader.com
sfogdall@schnader.com
lissa@schnader.com

Danielle Bruno McDermott (PA I.D. No. 324539)
Fifth Avenue Place, Suite 2700
120 Fifth Avenue
Pittsburgh, PA 15222
(412) 577-5221
dbrunomcdermott@schnader.com

*Attorneys for Plaintiff Lloyd Williams*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ i

I. Comenity is a State-Chartered Bank, Not a Federal Savings Association ........ 2

II. The HOLA Does Not Apply to a State-Chartered Bank Such as Comenity ........ 3

III. HOLA Preemption Does Not Extend to an Assignee Under Conflict Preemption Principles ........ 5

IV. The LIPL is Not Preempted by Section 27 of the FDIA or the FDIC's Interest-Rate Regulation ........ 8

V. If the LIPL Were Preempted, Midland Would be Entitled to Summary Judgment........ 10

CONCLUSION ........ 10

**TABLE OF AUTHORITIES**

**Cases**

*Barnett Bank of Marion Cnty., N.A. v. Nelson*,
517 U.S. 25 (1996)........................................................................ 7

*In re Cmty. Bank of Northern Va.*,
418 F.3d 277 (3d Cir. 2005)............................................................ 8

*Kahn v. Bank of New York Mellon*,
525 Fed. Appx. 778 (10th Cir. 2013)................................................. 2

*Lusnak v. Bank of America, N.A.*,
883 F.3d 1185 (9th Cir. 2018) ........................................................ 6

*Madden v. Midland Funding, LLC*,
786 F.3d 246 (2d Cir. 2015)............................................................ 6, 7

*McShannock v. JP Morgan Chase Bank, NA*,
976 F.3d 881 (9th Cir. 2020) ........................................................ 3, 4, 5, 6, 7

*Meade v. Avant of Colorado, LLC*,
307 F. Supp. 3d 1134 (D. Colo. 2018)............................................... 8

*Norris v. Bayview Loan Servicing, LLC*,
2015 WL 6745048 (C.D. Cal. Oct. 26, 2015)........................................ 5

*Valentine v. Unifund CCR, Inc.*,
2021 WL 912854 (D.N.J. Mar. 10, 2021)............................................. 3, 9

**Statutes and Regulations**

12 U.S.C. § 1461........................................................................ 4

12 U.S.C. § 1462........................................................................ 3

12 U.S.C. § 1463........................................................................ 4

12 U.S.C. § 1464........................................................................ 4

12 U.S.C. § 1465........................................................................ 1, 3, 4, 5, 6, 7, 10

12 U.S.C. § 1813........................................................................ 3

12 U.S.C. § 1831d...................................................................... 1, 5, 7, 8, 9, 10

12 C.F.R. § 7.4001 ..................................................................... 9

12 C.F.R. § 160.2 .......... 4, 7

12 C.F.R. § 331.4 .......... 1, 8, 9

12 C.F.R. § 560.2 .......... 6

41 P.S. § 604 .......... 9, 10

**Other Authorities**

Federal Interest Rate Authority, 85 Fed. Reg. 44,146 (Jul. 22, 2020) .......... 1, 2, 9

As directed by the Court, this brief shows cause why summary judgment should not be entered in favor of Midland on the basis that Section 6 of the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1465, preempts Pennsylvania's Loan Interest and Protection Law ("LIPL") under the facts of this case. *See* ECF Doc. 83 (ordering plaintiff to show cause).[1] As explained below, the HOLA does not preempt the LIPL under the facts of this case because the bank that originated Mr. Williams' credit card account, Comenity Capital Bank ("Comenity"), is not a federal savings association (or, for that matter, a state savings association). It is a Utah-chartered industrial bank insured by the Federal Deposit Insurance Corporation ("FDIC"). Therefore, the HOLA does not apply to it. Moreover, even if the HOLA did apply to Comenity, its preemptive effect should not extend to an assignee such as Midland under the conflict preemption principles that apply post-Dodd-Frank.

As discussed in prior briefs, Comenity's interest-rate authority is governed by Section 27 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d. Therefore, if preemption were triggered by the facts of this case, it could only be under Section 27. But Section 27 on its face does not preempt the LIPL from applying to Midland. While the FDIC has recently adopted a regulation to implement Section 27, now codified at 12 C.F.R. § 331.4 (the "Interest-Rate Regulation"), this regulation does "not address or affect the broader licensing or regulatory requirements that apply to banks and non-banks under applicable State law." Federal Interest Rate

[1] This brief will refer to defendants collectively as "Midland."

Authority, 85 Fed. Reg. 44,146, 44,153 (Jul. 22, 2020). Therefore, the Interest-Rate Regulation does not preempt the LIPL under the facts of this case either.

## I. Comenity is a State-Chartered Bank, Not a Federal Savings Association.

In its initial summary judgment brief, Midland acknowledged that Comenity is "a state-charte[r]ed FDIC insured bank." ECF Doc. 60-2 at 11 (page 16 of 33); *see also id.* at 15 (page 20 of 33). However, in its opposition and reply briefs, Midland claimed, without support, that Comenity is a "federal savings association." ECF Doc. 65 at 8 (page 12 of 24); *see also* ECF Doc. 71 at 1. Midland is wrong.

Comenity is a Utah industrial bank. *See, e.g.,* JA 229 (reciting that Comenity is "a Utah industrial bank"); *see also* ECF Doc. 18-2 at ¶ 4 (stating under oath that Comenity "is a Utah Industrial Bank"). The website of Utah's Department of Financial Institutions lists Comenity as a Utah industrial bank,[2] and describes an industrial bank as a "state chartered depository institution."[3] The same website lists only two federal savings associations located in Utah, neither of which is Comenity.[4] Likewise, the website of the Office of the Comptroller of Currency ("OCC") provides a list of federal savings associations, and Comenity is not on it.[5] Lastly, the

---

[2] https://www.utah.gov/dfi/FinancialInstitutions.html (filtered to show "State Industrial Banks"). The Court can take judicial notice of online lists of financial institutions maintained by agencies such as Utah's Department of Financial Institutions, the OCC and the FDIC. *See, e.g., Kahn v. Bank of New York Mellon*, 525 Fed. Appx. 778, 780 (10th Cir. 2013) (taking judicial notice of the OCC's online list of national banks).

[3] https://dfi.utah.gov/financial-institutions/industrial-banks/.

[4] https://www.utah.gov/dfi/FinancialInstitutions.html (filtered to show "Federal Savings Associations").

[5] https://www.occ.treas.gov/topics/charters-and-licensing/financial-institution-lists/thrifts-by-name.pdf.

FDIC's website identifies Comenity as a "State Chartered Bank" that is insured by the FDIC.[6] Therefore, Comenity is not a federal savings association.

Nor, for that matter, is Comenity a state-chartered savings association. *See* 12 U.S.C. § 1813(b)(3) (defining "State savings association" in the FDIA); *see also* 12 U.S.C. § 1462(2) (adopting the FDIA's definition of "savings association" in the HOLA). Rather, for purposes of the FDIA and the HOLA, Comenity is a "State bank." *See* 12 U.S.C. § 1813(a)(2) (defining the term "State bank" to mean "any bank, banking association, trust company, savings bank, industrial bank (or similar depository institution which the [FDIC] finds to be operating substantially in the same manner as an industrial bank)" that is "in the business of receiving deposits" and "is incorporated under the laws of any State").

In short, Comenity is not a savings association, federal or otherwise. It is a bank chartered by the state of Utah and insured by the FDIC.

**II. The HOLA Does Not Apply to a State-Chartered Bank Such as Comenity.**

The Court's Order to Show Cause cites Section 6 of the HOLA, titled "State law preemption standards for Federal savings associations clarified," which was added by Dodd-Frank. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Title X, § 1046 (codified at 12 U.S.C. § 1465). Prior to the addition of Section 6, the Office of Thrift Supervision ("OTS") "occupie[d] the entire field of lending regulation for federal savings associations." *McShannock v. JP Morgan Chase Bank, NA*, 976 F.3d 881, 889 (9th Cir. 2020). Dodd-Frank eliminated field preemption for federal savings associations and adopted a conflict preemption scheme instead, the

6 https://banks.data.fdic.gov/bankfind-suite/bankfind/details/57570. Furthermore, the OCC "charters, regulates and supervises all . . . federal savings associations[.]" *Valentine v. Unifund CCR, Inc.*, 2021 WL 912854, *4 n.4 (D.N.J. Mar. 10, 2021) (quoting the OCC's website). Comenity is not chartered, regulated or supervised by the OCC. It is chartered by the state of Utah, and insured by the FDIC, which is its primary federal regulator.

same scheme that applies to national banks. 12 U.S.C. § 1465(b); *see McShannock*, 976 F.3d at 885 n.3. Dodd-Frank also transferred oversight of federal savings associations to the OCC. *Id.* at 887 n.4.

Section 6 of the HOLA provides that "[a]ny determination by a court . . . regarding the relation of State law to a provision of this chapter or any regulation or order prescribed by this chapter shall be made in accordance with the laws and legal standards applicable to national banks regarding state law." 12 U.S.C. § 1465(a); *see also* 12 C.F.R. § 160.2 ("State law applies to the lending activities of Federal savings associations and their subsidiaries to the same extent and in the same manner that those laws apply to national banks and their subsidiaries." (effective Jul. 21, 2011)).

Section 6 does not apply to Comenity. The phrase "this chapter" in Section 6 refers to the HOLA itself. *See* 12 U.S.C. § 1461 ("*This chapter* may be cited as the "Home Owners' Loan Act.'" (emphasis added)). The HOLA on its face applies to federal and state "savings associations," not banks. For example, Section 4 provides for the supervision of "savings associations" and, among other things, grants the OCC supervision over federal savings associations, grants the FDIC supervision over state savings associations, and gives the OCC power to "prescribe regulations with respect to savings associations." 12 U.S.C. § 1463(a)(1)&(2). In addition, Section 4(g) governs the interest rate that "a savings association may charge." 12 U.S.C. § 1463(g). None of these provisions is applicable to Comenity because, as shown above, it is not a "savings association." It is a state-chartered *bank*, specifically a Utah industrial bank.[7] Thus, no "determination . . . regarding the relation of State law to a provision of this chapter," *i.e.*,

[7] Similarly, Section 5 of the HOLA governs the chartering of federal savings associations by the OCC. *See* 12 U.S.C. § 1464. Again, Comenity is not a federal savings association, so Section 5 is irrelevant to it

the HOLA, could apply to Comenity. 12 U.S.C. § 1465(a). Indeed, Section 6 itself is titled "State law preemption standards *for Federal savings associations* clarified," confirming that it does not apply to Comenity. *See, e.g., Norris v. Bayview Loan Servicing, LLC*, 2015 WL 6745048, *3 (C.D. Cal. Oct. 26, 2015) (HOLA preemption did not apply where loan was not originated by or serviced by a federal savings association).

In sum, Section 6 of the HOLA does not apply to Comenity. Instead, Comenity's interest rate authority is governed by Section 27 of the FDIA.[8] However, if Comenity *were* a federal savings association such that Section 6 did apply to it, Mr. Williams interprets the Court's Order to Show Cause to be directing him to address whether the preemptive effect of the HOLA would extend to an assignee such as Midland under the logic of the Ninth Circuit's decision in *McShannock*. As shown in the next section, *McShannock* does not support such an extension because that decision crucially depended on *field* preemption principles that no longer apply post-Dodd-Frank.

## III. HOLA Preemption Does Not Extend to an Assignee Under Conflict Preemption Principles.

The Court's Order to Show Cause cites the Ninth Circuit's decision in *McShannock*, which concluded that "HOLA preemption principles extend to a situation where . . . a loan originates from a federal savings association, but [a] state purports to regulate the conduct of a non-federal savings association . . . over that same loan." 976 F.3d at 889; *see* ECF Doc. 83 n.1. The Ninth Circuit concluded under this reasoning that a California law requiring interest to be paid on escrow accounts could not be applied to a national bank with respect to a loan previously originated by a federal savings association that the national bank had acquired. *Id.* at 889-90.

---

[8] Section 27 is discussed briefly below in Part IV. As shown there, it does not preempt the LIPL from applying to Midland.

The court's analysis in *McShannock* critically turned on *field* preemption principles. *Id.* at 889, 894. The court relied on 12 C.F.R. § 560.2, in which the OTS stated that it occupied "the entire field of lending regulation for federal savings associations" in order to "give federal savings associations *maximum flexibility* to exercise their lending powers in accordance with a uniform federal scheme of regulation." *Id.* at 888-89 (quoting 12 C.F.R. § 560.2(a) (emphasis in original)).[9] Under this field preemption scheme, "any state law having more than an 'incidental effect on the lending operations of' federal savings associations" was preempted. *Id.* at 890 (quoting 12 C.F.R. § 560.2(c)(6)(ii)).

As proof that field preemption principles were critical to the outcome in *McShannock*, the court acknowledged its earlier decision in *Lusnak v. Bank of America, N.A.*, 883 F.3d 1185 (9th Cir. 2018), in which the court had concluded, under conflict preemption principles, that the *same* California escrow-interest law was *not* preempted when the loan at issue had not originated from a federal savings association. *See Lusnak*, 883 F.3d at 1196-97; *McShannock*, 976 F.3d at 894 (discussing *Lusnak*).

As discussed above, the field preemption principles applied in *McShannock* no longer apply to the HOLA. 12 U.S.C. § 1465(b); *McShannock*, 976 F.3d at 885 n.3. Therefore, whether "HOLA preemption . . . extend[s] to . . . a non-federal savings association" that acquired a loan from a federal savings association, 976 F.3d at 889, would today have to be decided under *conflict* preemption principles. Under these principles, preemption cannot be found unless application of state law would "significantly interfere with a [a financial institution's] ability to exercise its

---

[9] The court applied the OTS's pre-Dodd-Frank regulation because that "was the operative rule at the time [the plaintiffs] obtained their mortgages." *Id.* at 885 n.3.

[statutorily granted] power[s]." *Madden v. Midland Funding, LLC*, 786 F.3d 246, 250 (2d Cir. 2015) (quoting *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996)).[10]

Applying this standard, HOLA preemption should not prevent the LIPL from applying to a debt buyer like Midland. Applying "state usury laws" to a debt buyer that acquired a loan from a federal savings association "would not prevent consumer debt sales by [federal savings associations] to third parties." *Madden*, 786 F.3d at 251. At most, "usury laws might decrease the amount a [federal savings association] could charge for its consumer debts in certain states," but "such an effect would not 'significantly interfere' with the exercise of a [federal savings association's] power." *Id.*[11] Thus, while HOLA would preempt application of the LIPL to a federal savings association, its preemptive effect should not extend to a debt buyer like Midland.[12]

To sum up, the LIPL is not preempted by Section 6 of the HOLA under the facts of this case because Comenity is not a savings association of any sort (federal or state), and the preemptive effect of the HOLA does not extend to a debt buyer like Midland under the now-applicable conflict preemption standard.

If the LIPL were preempted under the facts of this case at all, it could only be by Section 27 of the FDIA, which applies to "State-chartered insured depository institutions" such as

---

[10] *Madden* involved preemption under the National Bank Act, but, as already mentioned, the same preemption scheme now applies under the HOLA. 12 C.F.R. § 160.2.

[11] Moreover, Midland has offered no evidence of any such effect in this proceeding.

[12] As the Court notes in its Order to Show Cause, the *McShannock* court was critical of the Second Circuit's analysis in *Madden*. However, the *McShannock* court did not acknowledge that the outcome in *Madden* was governed by the much more stringent *conflict* preemption standard. By contrast, under the *field* preemption scheme applied in *McShannock*, preemption can be found if a state law has more than a mere "incidental effect" on the lending operations of a federal savings association. 976 F.3d at 890-91, 893

Comenity. 12 U.S.C. § 1831d. However, as next briefly discussed, Section 27 of the FDIA does not preempt the LIPL under the facts of this case.

## IV. The LIPL is Not Preempted by Section 27 of the FDIA or the FDIC's Interest-Rate Regulation.

As shown above, Comenity is a state-chartered bank insured by the FDIC.[13] Therefore, its interest-rate authority is governed by Section 27 of the FDIA, 12 U.S.C. § 1831d, not the HOLA or the National Bank Act. Section 27 on its face "appl[ies] *only* to . . . state chartered banks, *not to non-bank purchasers* of . . . loans such as [Midland]." *In re Cmty. Bank of Northern Va.*, 418 F.3d 277, 296 (3d Cir. 2005) (emphasis added).[14] It states that "[i]n order to prevent discrimination against *State-chartered insured depository institutions* . . . with respect to interest rates, . . . *such State bank*[*s*] . . . may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve and charge on any loan . . . interest at a rate . . . allowed by the laws of the State . . . where *the bank* is located[.]" 12 U.S.C. § 1831d(a) (emphasis added); *see also, e.g., Meade v. Avant of Colorado, LLC*, 307 F. Supp. 3d 1134, 1144-45 (D. Colo. 2018) (explaining that Section 27 "governs what charges a 'State bank' may impose, but . . . does not on its face regulate interest or charges that may be imposed by a non-bank, *including one which later acquires or is assigned a loan* made or originated by a state bank" (emphasis added)). Thus, the preemptive effect of Section 27 does not extend to a non-bank assignee of a loan. *Cmty. Bank*, 418 F.3d at 296.

As the parties have discussed in prior briefs, the FDIC recently adopted the Interest-Rate Regulation, which states that "[i]nterest on a loan that is permissible under section 27 of the [FDIA]

---

[13] *See, e.g., supra* note 6.

[14] In *Community Bank*, the Third Circuit referred to Section 27 of the FDIA as Section 521 of the Depository Institutions Deregulation and Monetary Control Act. *See* 418 F.3d at 285, 295 & n.10.

shall not be affected by . . . assignment, or other transfer of the loan." 12 C.F.R. § 331.4(e). However, the FDIC has emphasized that the Interest-Rate Regulation does "not address or affect the broader licensing or regulatory requirements that apply to banks and non-banks under applicable State law." 85 Fed. Reg. at 44,153. Thus, a state may still require that an assignee of a loan satisfy licensing or other regulatory requirements to collect interest in excess of the state's usury rate.[15]

In Pennsylvania, a creditor cannot collect interest in excess of the LIPL's 6% limit unless it has express authority to do so under a statutory scheme inconsistent with the LIPL. *See* 41 P.S. § 604. Most commonly, a creditor obtains such authority by being licensed as a consumer discount company under Pennsylvania's Consumer Discount Company Act. *Id.* However, another way for a creditor to obtain such authority is to be chartered as a bank or other financial institution subject to its own distinct regulatory regime. *Id.* Midland has chosen not to do either of these things, nor has it identified any other putative authority to exceed the LIPL's limit beyond its mere status as Comenity's assignee. But Section 604 does not recognize *assignment* of a loan as establishing an exception to the 6% limit.

In sum, the LIPL's requirement that a creditor must be a bank, consumer discount company or other specifically authorized institution in order to collect interest in excess of the 6% limit is a "regulatory requirement" that is "not address[ed] or affect[ed] by" Section 27 of the FDIA or the FDIC's Interest-Rate Regulation. 85 Fed. Reg. at 44,153. Therefore, the LIPL is not preempted under the facts of this case.

---

[15] As one district court in this Circuit has concluded, because the "rule change" under the FDIC's Interest-Rate Regulation, and the similar regulation adopted by the OCC, *see* 12 C.F.R. §7.4001(e), "did not impact licensing requirements, the [FDCPA] case law addressing a debt collector's lack of a license is not impacted by the regulator change." *Valentine*, 2021 WL 912854 at *5.

**V. If the LIPL Were Preempted, Midland Would be Entitled to Summary Judgment.**

As demonstrated above, the LIPL is not preempted by Section 6 of the HOLA under the facts of this case. Nor is it preempted by the National Bank Act, Section 27 of the FDIA, or the FDIC's Interest-Rate Regulation. However, should the Court reach a contrary conclusion, Midland would be entitled to summary judgment on all of Mr. Williams' claims.

**CONCLUSION**

For the forgoing reasons, Midland is not entitled to summary judgment because Section 6 of the HOLA does not preempt the LIPL under the facts of this case.

Respectfully submitted,

/s/ *Stephen A. Fogdall*
Ira Neil Richards (Pa. I.D. 50879)
Stephen A. Fogdall (Pa. I.D. 87444)
Layal A. Issa (Pa. I.D. 329214)
Schnader Harrison Segal & Lewis LLP
1600 Market St., Suite 3600
Philadelphia, PA 19103
(215) 751-2581

Danielle Bruno McDermott (Pa. I.D. 324539)
Schnader Harrison Segal & Lewis LLP
Fifth Avenue Place, Suite 2700
120 Fifth Avenue
Pittsburgh, PA 15222

Dated: April 21, 2022