IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LLOYD WILLIAMS, *on behalf of himself and all others similarly situated*, <br> Plaintiff, <br><br> v. <br><br> ENCORE CAPITAL GROUP, INC., *et al.*, <br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civil No. 2:19-cv-05252-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                     May 6, 2022

**I.     OVERVIEW**

Plaintiff obtained a credit card from Comenity Capital Bank. This credit card charged an interest rate that would ordinarily be considered usurious and unlawful in Pennsylvania, which is where Plaintiff resides. But Comenity is a state-chartered, federally insured bank within the purview of the Federal Deposit Insurance Act and could, therefore, charge Plaintiff interest exceeding the limits imposed by Pennsylvania law.

Nothing in the preceding paragraph is controversial. Instead, this dispute centers on what happened after Defendants obtained Plaintiff's credit card account from Comenity and attempted to collect on Plaintiff's debt. Plaintiff insists that Defendants lacked authority to collect the debt because Defendants are not themselves the types of institutions federal law authorizes to disregard state usury laws. Defendants argue that they may collect the debt because the debt was "valid when made" and cannot become usurious upon assignment.

For the reasons that follow, the Court must agree with Defendants and grant their motion for summary judgment.

## II.     FACTUAL BACKGROUND

### a. Allegations

Comenity Capital Bank ("Comenity") is a bank chartered under Utah law and insured by the Federal Deposit Insurance Corporation ("FDIC"). Pl.'s Statement of Undisputed Facts ("PSUF") ¶ 27 (ECF No. 62-1); Defs.' Resp. Pl.'s Statement of Undisputed Facts ("DRSUF") ¶ 27 (ECF No. 65-1). Comenity issued a credit card to Plaintiff, and this credit card charged between 24.99% and 25.99% annual interest. PSUF ¶¶ 25–26, 29–31; DRSUF ¶¶ 25–26, 29–31. Over time, Plaintiff fell behind on his credit card payments. PSUF ¶ 30; DRSUF ¶ 30. Comenity closed Plaintiff's account, charged it off, and sold the account to Defendants.[1] PSUF ¶¶ 34, 37, 40; DRSUF ¶¶ 34, 37, 40.

After acquiring Plaintiff's account, Defendants made various efforts to collect on Plaintiff's debt. PSUF ¶¶ 46–59; DRSUF ¶¶ 46–59, 64. Unlike Comenity, Defendants are not state-chartered, federally insured banks. PSUF ¶ 42; DRSUF ¶ 42.

### b. Procedural History

In response to Defendants' efforts to collect on his debt, Plaintiff filed this lawsuit in federal court claiming that Defendants lack authority to collect a portion of his debt and that Defendants' efforts to collect that portion violate Pennsylvania and federal law. *See* ECF No. 1. Plaintiff brought this lawsuit as a putative class action on behalf of himself and other Pennsylvania residents from whom Defendants have attempted to collect debt. *Id.* ¶ 55.

---

[1] Defendants are three distinct corporate entities, and the parties disagree about the extent to which the conduct of any one Defendant can be charged against the other Defendants. But the precise relationship among these entities and the piercability of their corporate veils has no bearing on the Court's decision in this case. Accordingly, the Court refers to all Defendants collectively throughout this opinion.

After holding a conference with counsel, this Court instructed the parties to complete discovery related to class certification and the merits of Plaintiff's individual claims. *See* ECF No. 37. The parties have now completed that discovery. Plaintiff has moved for class certification and partial summary judgment, and Defendants have moved for total summary judgment. *See* ECF Nos. 60, 61, 62.

The parties' motions for summary judgment are presently before the Court. Because the Court finds Defendants' motion dispositive of all Plaintiff's claims, the Court will not proceed to address Plaintiff's motions for partial summary judgment or class certification.

### III.   LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this case, the facts material to the Court's analysis are not in dispute. Instead, the parties' dispute centers on how the law applies to those facts.

### IV.   ANALYSIS

The central issue in this case is whether Pennsylvania's Loan Interest and Protection Law (the "LIPL") applies to Defendants' attempts to collect Plaintiff's debt. If the LIPL does not apply, then Plaintiff agrees that all his claims must fail. Pl.'s Resp. Order Show Cause at 10 (ECF No. 84).

The LIPL is Pennsylvania's usury statute. It establishes that, subject to certain exceptions, the "maximum lawful rate of interest for the loan or use of money of fifty thousand dollars . . . or less . . . shall be six per cent per annum." 41. P.S. § 201(a). When a debtor is made to pay interest exceeding this maximum rate, the LIPL authorizes the debtor to sue and recover treble damages. 41 P.S. § 502.

Being a creature of state law, however, the LIPL cannot apply when its application is preempted by federal law. *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963).

In this case, the LIPL is preempted from applying to Defendants' attempts to collect on Plaintiff's account by the Federal Deposit Insurance Act (the "FDIA"). Under the FDIA, a state-chartered, federally insured bank may ignore state usury laws when issuing loans. 12 U.S.C. § 1831d (expressly preempting "any State constitution or statute" limiting the interest rate a state-chartered, federally insured bank may charge); *Greenwood Tr. Co. v. Com. of Mass.*, 971 F.2d 818, 827 (1st Cir. 1992) (concluding that state-chartered, federally insured banks may ignore the usury laws not only of their home-state but also of their customers' home-state); *see also In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 295 (3d Cir. 2005) (citing *Greenwood*).[2] The FDIA does not expressly address whether the *assignee* of a state-chartered, federally insured bank's loan may disregard state usury laws when collecting on the assigned loan. But the FDIC recently issued a final rule clarifying this issue. *See* Federal Interest Rate Authority, 85 Fed. Reg. 44,146-01 (Jul. 22, 2020) (codified at 12 C.F.R. § 331.1–4).

In its recent rule, the FDIC interprets the FDIA to permit the assignee of a state-chartered, federally insured bank's loan to collect interest to the same extent the originating bank could have. Specifically, the rule provides that the "permissib[ility]" of "interest on a loan" is "determined as of the date the loan was made." 12 C.F.R. § 331.4(e). If the interest on a loan is permissible at the time the loan was originated by a state-chartered, federally insured bank, then

---

[2] Courts refer to the authority codified at 12 U.S.C. § 1831d in a variety of ways. Some courts refer to this authority as section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"). Other courts refer to this authority as section 27 of the Federal Deposit Insurance Act of 1950. For the sake of clarity and consistency, this opinion will refer to this authority as section 27 of the Federal Deposit Insurance Act.

the permissibility of that interest "shall not be affected by . . . the sale, assignment or other transfer of the loan." *Id.* The upshot of this rule is that, "if [a] loan was not usurious at [its] inception, the loan cannot become usurious at a later time, such as upon assignment, and the assignee may lawfully charge interest at the rate contained in the transferred loan." 85 Fed. Reg. at 44,149.

The Court must defer to the FDIC's interpretation of the FDIA. Congress has delegated interpretive authority to the FDIC. 12 U.S.C. § 1819(a)(Tenth) (empowering the FDIC to "prescribe . . . such rules and regulations as it may deem necessary to carry out the provisions of this chapter"). The FDIC has interpreted section 27 of the FDIA, which is silent and therefore ambiguous as to the effect state usury laws should have on a state-chartered, federally insured bank's ability to assign its loans to non-bank entities. Courts have long treated the power to assign a loan as implicit in a bank's power to make a loan. *See Planters' Bank v. Sharp*, 47 U.S. 301, 323 (1848) (reasoning that a bank's power to "discount[] notes and manag[e] property" necessarily implies that the bank may "assign, or sell those notes"). In light of this longstanding tradition and absent any statutory text to the contrary, the FDIC's interpretation of section 27 is reasonable and, therefore, warrants deference. *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) ("If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute.").[3]

---

[3] While the Third Circuit has held that section 27 of the Federal Deposit Insurance Act does not apply to "non-bank purchasers" of a state-chartered, federally insured bank's loans, the Third Circuit has not held that the Federal Deposit Insurance Act *unambiguously* demands this interpretation. *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 296 (3d Cir. 2005). As a result, the Third Circuit's interpretation must give way to the FDIC's. *Brand X*, 545 U.S. at 982 ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

Under the FDIC's rule, it is clear that the FDIA preempts the LIPL from applying to Defendants' attempts to collect on Plaintiff's account. In light of section 27 of the FDIA and precedents such as *Greenwood* and *Community Bank of Northern Virginia* interpreting that provision, it is indisputable that Comenity, as a state-chartered, federally insured bank, was permitted to collect interest exceeding the LIPL's limitations on the loan Comenity made to Plaintiff. Accordingly, the loan was not usurious when it was originated. And under the FDIC's rule, the loan could not have become usurious upon its assignment to Defendants. Defendants must be permitted to collect interest on the loan to the same extent Comenity could have despite the LIPL's limitations.

Plaintiff does not argue that the FDIC's rule is invalid or otherwise undeserving of deference—instead, Plaintiff argues that the FDIC's rule carves out an exception for laws like the LIPL. Specifically, Plaintiff points to language in the FDIC's final rule providing that the rule does not "address or affect the broader licensing or regulatory requirements that apply to banks and non-banks under applicable State law." 85 Fed. Reg. at 44,153. Plaintiff argues this language means the FDIC did not intend to displace statutes like the LIPL.

But the Court is unpersuaded. First, it is clear that the LIPL is not a "licensing" requirement. No provision of the LIPL requires a creditor to obtain a license before collecting on debts. The LIPL does exempt from its coverage any creditor who has authority under another federal or state law to collect higher interest, 41 P.S. § 604 ("If . . . this act is inconsistent with the provision of any other act establishing, permitting or removing a maximum interest rate. . . then the provision of such other act shall prevail"), and one way for creditors to obtain such authority in Pennsylvania is by obtaining a license under the Consumer Discount Company Act, 7 P.S. § 6213 (permitting entities licensed under the Consumer Discount Company Act to collect

interest exceeding the LIPL's maximum rate). But the mere fact that the LIPL contains a savings clause that can be satisfied by obtaining a license under a distinct regulatory regime—which is only *one* of the many ways to satisfy the savings clause—does not transform the LIPL into a licensing statute.

Nor can the LIPL be fit into the exception for other "regulatory requirements." The FDIC intended its new rule to clarify that "[a]n assignee can enforce the loan's interest rate terms to the same extent as the assignor." 85 Fed. Reg. at 44,155. Many state regulations, such as registration, reporting, or bonding requirements, could place unique incidental burdens upon a non-bank assignee's ability to collect on a loan. But none of these regulations would affect the interest rate that is *collectible* on a loan. Because these types of regulations do not affect the interest rate collectible by an assignee, the FDIC's rule can be read naturally to leave these types of regulations untouched. By contrast, however, the LIPL is purely and directly a limitation on the interest collectible on a loan. When the LIPL applies to an assignee's collection efforts, the assignee simply cannot "enforce the loan's interest rate terms to the same extent as the assignor." *Id.* If the LIPL could fit the FDIC's rule's exception, then the exception would swallow the rule.[4]

The Court emphasizes that its holding in this case is relatively narrow. The Court holds only that the FDIA, as it has been interpreted by the FDIC, preempts the LIPL's application to an assignee's efforts to collect on a loan that was legally originated by a state chartered, federally

---

[4] The District Court for the District of New Jersey reached a similar conclusion in interpreting identical language in a similar rule recently promulgated by the Office of the Comptroller of the Currency ("OCC"). *See Valentine v. Unifund CCR, Inc.*, No. 20-cv-5024, 2021 WL 912854, at *4–*5 (D.N.J. Mar. 10, 2021). In that case, the court drew a distinction between "usury laws" and other incidentally burdensome regulatory requirements and reasoned that the OCC's new rule preempted only the former. *Id.* at *5. The court concluded that New Jersey's requirement that "no person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act" was unaffected by the OCC's new rule because it was not a usury law. Here, however, it is clear that the LIPL is a usury law, and therefore must fall within the purview of the FDIC's new rule.

insured bank. The Court expresses no opinion as to whether the LIPL would be preempted under the National Bank Act, the Home Owners' Loan Act, or the Office of the Comptroller of the Currency's recent rule interpreting those statutes. *See* Permissible Interest on Loans that Are Sold, Assigned or Otherwise Transferred, 85 Fed. Reg. 33,530 (June 2, 2020).

Further, this Court's holding relies specifically upon the FDIC's recent final rule interpreting the FDIA. Were that regulation to be rescinded or found invalid upon a proper challenge, then the Third Circuit's decision in *Community Bank of Northern Virginia* would likely dictate a different result. On the specific facts of this case, however, and under the law as it exists today, the Court must enter summary judgment in favor of Defendants.

## V.  CONCLUSION

The FDIA, as interpreted by the FDIC in a recently promulgated final rule, preempts the LIPL from applying to Defendants' efforts to collect on a legally issued loan they acquired from a state-chartered, federally insured bank. Accordingly, Defendants are entitled to summary judgment on all counts as a matter of law.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge